## WILSON v. MORTON et al.

No. 2388. Opinion Filed November 14, 1911.

(119 Pac. 213.)

1. INDIANS—Lands—Sales—Proceedings by Guardian. The guardian and mother of two Cherokee minor children made, under section 22 of an act of Congress approved April 26, 1906 (34 U. S. Stat. at L. c. 1876, p. 145), application to the proper court for an order permitting her to sell and convey to the proposed purchaser of the mother's interest the undivided interest of her minor children and wards in the allotted lands inherited by them from their deceased father by filing in the court her petition, setting up the price offered by said purchaser and her contract to sell her interest to him, and introduced evidence to establish that the price offered for her wards' interests was the fair, reasonable market value thereof. The court thereupon made an order directing the sale of the minors' interests in the lands, and directed the guardian to convey to the purchaser of her interest the interests of her wards and to execute therefor her deed as guardian, all of which was done; and, upon report thereof made by the guardian to the court, the sale in all things was approved.

**Held,** that the sale was made in substantial compliance with said section 22, supra.

2. **SAME. Held,** also, that the said statute prescribes the procedure to be followed in making sales of inherited lands of Indian minors, authorized by said statute to be sold.

(Syllabus by the Court.)

*Error from District Court, Washington County; John J. Shea, Judge.*

Action by D. H. Wilson, as guardian, against Asa D. Morton and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Plaintiff in error, as guardian of his two wards, Alberta Mac and Dixie Joe Keeler, brought this action in the district court of Washington county for possession of, and to remove cloud from title and for an accounting for the rents and profits on, certain lands belonging to his wards located in that county. A demurrer to his petition was sustained by the trial court; and, since that action of the court constitutes the only assignment of error for reversal of the cause, it will be necessary to set out in some detail the facts alleged in his petition.

One Albert Keeler, who was a duly enrolled citizen of the Cherokee Nation and who died on October 20, 1905, was the father of the plaintiff's wards. At the time of his death there had been allotted to him the E. ½ of lot 2 and the S. ½ of lot 4, township 2 N., range 12 E., and thereafter deeds to said lands were executed by the duly authorized agents of the government. He left surviving him as his sole heirs at law Blanche Keeler, his widow, and his two minor children, now plaintiff's wards. He died intestate, and there was no administration upon his estate. Prior to his death he had leased the property in controversy for oil and mining purposes to the Cudahy Oil Company. That company has partially developed the property by drilling oil and gas wells thereon, and an income is being derived therefrom. About one year after Albert Keeler's death, Blanche Keeler, his surviving wife, was appointed guardian of their two children, and continued to serve as such until the 28th day of September, 1908,

when the county court, in which her guardianship was pending, after due notice and proper proceedings, removed her as guardian and appointed plaintiff in error. Prior to her removal as guardian, to wit, on the 6th day of May, 1908, she sold and conveyed her one-third interest in and to said land to defendant Asa D. Morton. At the same time she sold and contracted to convey to Morton the interests of her wards in said lands. She thereupon filed her verified petition as guardian with the county court, in which she set up the death of her husband, his ownership of the lands at the time of his death, and the offer of Morton to buy the interests of her wards and her tentative contract to sell same to him, and prayed for an order of court permitting and directing her, as guardian, to execute to Morton a deed, conveying their title and interest in and to the lands. Affidavits supporting the allegations of her petition, that the price offered and agreed upon for the wards' interests was the fair market value thereof, were filed with the petition. Upon hearing the application and evidence in support thereof, the court found the price offered for the land was the fair value thereof, and that the best interests of the wards would be subserved by the sale. On the same day the application was presented and filed, to wit, on the 19th day of May, 1908, the county court ordered that the guardian be authorized to make the sale and convey by deed to Morton the wards' title and interests, and that she be required to give an additional bond as required by law. On the same date, after the deed had been executed by her, the county judge indorsed his approval upon the deed; and, upon report of the same having been made by the guardian, an order was made by the county court in all things approving and confirming the sale. The sale and conveyance therefore by Blanche Keeler, as guardian, to Morton, was fully completed and consummated on May 19, 1908.

*Grinstead, Mason & Scott,* for plaintiff in error.

*Veasey & Rowland* and *J. D. Talbott,* for defendants in error.

HAYES, J. (after stating the facts as above). By agreement or concession of counsel there is but one proposition of law presented by this proceeding. That question is: Whether the proceedings taken and had by Blanche Keeler, guardian, in making the sale of her wards' interests in the lands, was in substantial compliance with the requirements of section 22 of an act of Congress, approved April 26, 1906 (34 U. S. Stat. at L. c. 1876, p. 145). It is the contention of plaintiff in error that in making a sale of a minor Indian's lands under said statute the statute of probate procedure of the state regulating the sale of real estate of minors shall be followed, and that, since it was not followed in this case, the sale is void. This contention necessarily presents as the first question for determination whether the state statute prescribing the procedure for sale of minors' lands has any application to the sale made under section 22 of the federal statute. Our decision upon this question renders it unnecessary to decide whether the departure in the procedure pursued in this case from the procedure prescribed by the state statutes would render the sale void or only voidable.

What is required in order to make a valid sale under section 22 of the federal statute is now presented to this court for the first time. There may have been other cases decided by the court heretofore, under the facts of which this question could have been presented. If so, our attention was not challenged or directed thereto, and no decision thereon has ever been made. The trial court took the view that said section 22 fixes within its own terms the procedure to be followed in making a sale thereunder, and that no other statute has any application thereto. In that view we concur. Section 22 of the act of Congress of April 26, 1906, reads as follows:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed

by the proper United States court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

Congress by this statute intended to and did remove all restrictions upon the alienation of lands inherited from deceased Indians of the Five Civilized Tribes in the hands of adult heirs, which had been placed thereon by the various acts and treaties of Congress with the Indian tribes. It authorized all such adult heirs, except those of full blood, to sell their inherited lands without the approval of anyone; but full-blood adult heirs could convey only with the approval of the Secretary of the Interior. The act does not undertake to remove generally the restrictions upon alienation by minor heirs. It does authorize under certain conditions certain minor heirs to convey. It is important in the construction of the statute and in arriving at the intent of the legislative will to notice the class of minor heirs whose inherited lands are authorized to be sold. The classification of those who may sell and those who may not sell is not made upon the basis of the quantum of Indian blood of the heirs, as has been the case in all instances before and since this act, where Congress has attempted to remove restrictions upon the power of alienation of certain members of these tribes, but to retain them as to others. The power of the minor heir to sell is not made dependent upon whether he is a full-blood Indian or less than a full-blood, nor dependent upon his age, nor upon whether a sale of his land is necessary to his education and support, or to be made for the purpose of investment. His authority to sell by his guardian is made dependent upon the existence of an adult heir, and, where there is an adult heir, authority is not given to the minor to sell alone and separately his interest, but he may, acting through his guardian, upon order of court, join the adult heir in a sale. The act does not specifically prescribe that the sale may

be made for the purpose or under the procedure prescribed by the statute then in force in the Indian Territory, authorizing and providing for the sales of real estate of other minors than Indians; and, if said statutes or the statutes in force at the time of this sale ever had any application to the sales of minors' lands made under said section 22 of the federal act, they must be held to have done so by implication, and not by any express provision of the act. If Congress intended that the statutes in force in the Indian Territory at the time of the passage of this act should fix the procedure to be followed in making such sales at the passage of the act, it may be assumed that Congress knew what such statutes were; and, if the procedure prescribed by the statutes would in a large measure defeat the legislative purpose in permitting minor heirs to join the adult heirs in the sale, the act ought not to be held by mere implication to provide that such sales should be governed by those statutes. In placing restrictions upon the alienation by Indian allottees of the Five Civilized Tribes of their allotted lands, the legislative purpose was to protect the Indian against his own improvidence, against the cunning of those who, through cupidity, might undertake to procure from them their lands at inadequate prices, and to protect them against the superior business ability of his more experienced white neighbors until such Indians might become familiar with their lands and their value, and sufficiently adapted to the new condition in which they were placed by a division of their tribal property that they could realize the full value of their lands when the same were placed upon the market by them. In authorizing the adult heirs to sell their inherited lands, Congress correctly anticipated that many cases would arise in which there would be both adult and minor heirs, each holding an undivided interest in the lands of a deceased allottee; and, unless some provision was made for the minor heirs to join with the adult heirs in the sale of the entire property, the very property which the act authorizes the adults to sell would be attended with conditions that would greatly tend to prevent those Indians whom the government had theretofore kept under its protecting care from securing the

market value of their interest in their inherited estates; and, if the adult heirs sold their lands, then the minor heirs, on becoming of age, or when the restriction should be removed from their power to sell, would find their opportunities to sell to any one except the purchaser from the adult heir greatly lessened and the value of their property greatly depreciated on that account before they had power or opportunity to convey. By permitting the adult heirs and the minor heirs to join in one sale of the entire property no embarrassment need arise in making the sale because the property is owned by various persons.

Sections 3502-3511 of Mansfield's Digest of the Statutes of Arkansas (Ind. T. St. 1899, §§ 2398-2407), in force in the Indian Territory at the time of the enactment of the federal act of April 26, 1906, provide for the sale of minor's land for certain purposes, and prescribe how such sales shall be made. Section 3502 authorizes the probate court to order a sale of a minor's real estate for the purpose of educating the minor, and the succeeding sections provide how such sales shall be advertised and conducted. Sales for the purposes provided by that section are required to be at public auction to the highest bidder, and by section 3506 the guardian is required to report the sale to the court for confirmation; and, if the court refuse to approve the sale, the order of sale is renewed, and the same proceedings had as upon the original order. Section 3509 authorizes a sale when it appears that it will be for the benefit of the ward for the sale to be made, and the proceeds put out at interest or invested in other property named in the statute; and the succeeding section provides how sales for the purpose shall be made. But the sale authorized by said section 22 of the federal act is not based upon either of the foregoing purposes. The power of the court to permit the guardian to join in a sale with the adult heir is not dependent upon the sale's being necessary for the purpose of educating the minor or upon its appearing beneficial to the ward's estate for the purpose of investment. The court's discretion is not limited by either of these statutes; and, if the sale is to be made under the procedure prescribed by these statutes then in ·

force in the Indian Territory, which statute is to govern? The one regulating the sale for the purpose. of education, or the one regulating ·sales for the purpose of investment? A sale made for the purpose of education must be by a public sale and to the highest ·bidder and a sale for the investment may be by public sale, if the court so orders. Sections 3503, 3511, 174, Mansfield's Digest of the Statutes of Arkansas (Ind. T. St. 1899, §§ 2399, 2407, 231). Such a sale contemplates one at which all may bid, and the highest bidder becomes the purchaser, if the amount bid by him meets the approval of the court as a fair price. But, if the highest bidder at a guardian's sale under the· federal act was other than the purchaser from the adult heir (conceding without deciding that the act authorizes a sale under any condition by the guardian to any other person than the purchaser from the adult heir), it would be in the power of the purchaser from the adult heir to prevent a sale to the highest bidder by refusing to purchase the adult heir's interest, unless he secured the minor heir's interest, for the act only authorizes the guardian to join in a sale with the adult heir; hence, there could, in effect, be but one bidder at the public sale. The language of said section 22 here under consideration can be said to be but slightly ambiguous, if ambiguous at all. There can be no doubt as to what Indian minors may, under its provisions, sell their inherited lands, or when they can sell. As to how the sale shall be made, the act provides that it shall be by the guardian, duly appointed,. upon order of the court, and that the order of court shall be made upon petition filed by the guardian. The procedure prescribed by the act itself seems to us complete. There is no express intent to incorporate the provisions of any other statute into this one, or to make any other statute applicable to sales thereunder; and we think it should not be construed as accomplishing· this result, when to do so would lead to confusion and to a practical, if not complete, defeat of the purposes of the act.

The suggestion that this conclusion lodges a large discretion and unrestrained power in the courts of· the Indian Territory and in the county courts of the state·succeeding the courts of the

Indian Territory in this jurisdiction does not militate against this construction of the statute. The power of Congress to regulate how lands may be sold which have been allotted by the federal government to members of the Indian tribes with restrictions upon their power to alienate them has been often sustained by the courts; and the policy of Congress both as to the Five Civilized Tribes and as to other Indian Tribes, where sales have been permitted subject to the approval of some designated agent or authority of the government, has been to lodge in such officer a broad discretion to be exercised in determining whether such sales shall be approved.   The act authorizing certain of the minors to join with adult heirs in the sale does not apply to all minors, and is not general in its nature.   It attempts to provide for the conveyance by certain minors in specific cases of their undivided interests in inherited lands, and we must look to the terms of the statute itself for the procedure by which such sales may be made, and not to the general statutes of the state authorizing and regulating the sale of the real estate of minors.   The sale in this case was made in substantial compliance with its provisions.   The sale was completed before the approval of Act Cong. May 27, 1908, 35 U. S. Stat. at L. p. 312, c. 199, and the provisions of that act have no application.

There may be other questions which, under the facts in this case, could have been presented, but they have been waived by counsel in their briefs, and our failure to notice them is not to be construed as in any manner passing upon them.

·The judgment of the trial court is affirmed.

All the Justices concur.