*In re* BILLY *et al.*

No. 1579.    Opinion Filed March 12, 1912.

Rehearing Denied June 25, 1912.

(124 Pac. 608.)

1.    **COURTS—Sale of Realty—Refusal to Confirm—Appeal.** Section 1793, Wilson's Rev. & Ann. St. 1903 (section 5451, Comp. Laws 1909), subd. 5, authorizes the purchaser at a guardian's sale to appeal from the county court to the district court from an order refusing to confirm a guardian's sale.

2.    **GUARDIAN AND WARD—Sale of Realty—Refusal to Confirm.** Under section 1667, Wilson's Rev. & Ann. St. 1903 (section 5323, Comp. Laws 1909), where a hearing is had upon the return of a guardian's sale, the county court, having jurisdiction, may, in the exercise of a sound discretion, refuse to confirm such sale.

3.    **SAME—Discretion of Court.** The matter of the confirmation of a guardian's sale is one that rests peculiarly in the wise discretion of the court, taking into consideration all of the surrounding facts and circumstances, and should primarily be exercised in the interest of the infant.

4.    **APPEAL AND ERROR—Review — Decisions of Intermediate Courts.** Where, on appeal from the county court to the district court, testimony is taken, showing the value of lands sold at guardian's sale, from which the trial court finds that the price bid was disproportionate to the value of the lands sold, and where the finding is reasonably supported by the testimony, this court, on appeal, will not reverse the judgment of the trial court.

(Syllabus by Sharp, C.)

*Error from District Court, Le Flore County;*

*M. E. Rosser, Judge.*

In the matter of the guardianship of Ephriam Billy and others. Proceedings by Charles Billy, guardian, for the sale of land. From an order refusing to confirm the sale, U. S. Joines, purchaser, brings error. Affirmed.

*Thos. Norman,* for plaintiff in error.

*Welch & Cruthis,* for defendants in error.

Opinion by SHARP, C.   The first question to be determined is that of the right of plaintiff in error, U. S. Joines, to prose-

cute an appeal from the county court to the district court of Le Flore county. Plaintiff in error was the highest and only bidder at the guardian's sale, and, upon a return of sale being made, the county court, after due notice of the hearing had been given, found that the sum bid was disproportionate to the value of the land offered for sale.

Section 1793, Wilson's Rev. & Ann. St. 1903 (section 5451, Comp. Laws 1909), provides that an appeal may be taken to the district court from a judgment, decree, or order of the probate (county) court against or in favor of directing the partition, sale, or conveyance of real property. We think the appeal in this case comes within the language of the statute, according to its fair, liberal meaning. *Estate of Joseph R. Corwin,* 61 Cal. 160; *In re Pearson's Estate,* 98 Cal. 603, 33 Pac. 451; *Hammond v. Cailleaud,* 111 Cal. 206, 43 Pac. 607, 52 Am. St. Rep. 167; *In re Leonis' Estate,* 138 Cal. 194, 71 Pac. 171; *In re Reed's Estate,* 3 Cal. App. 142, 85 Pac. 155.

The remaining assignments of error may be considered under one head. Did the trial court commit reversible error in refusing to confirm the guardian's sale? Plaintiff in error contends that, in the absence of fraud and wrongdoing, and where the proceedings were regular, the court was without authority of law to refuse to confirm the sale because the sum bid was disproportionate to the value of the lands, unless a sum exceeding said bid at least ten per cent., exclusive of the expenses of a new sale, may be obtained.

Section 1667, Wilson's Rev. & Ann. St. 1903 (section 5323, Comp. Laws 1909), provides that "upon the hearing, the court must examine the return and witnesses in relation to the same, and if the proceedings were unfair, or the sum bid disproportionate to the value, and if it appears that a sum exceeding such bid at least ten per cent., exclusive of the expense of a new sale, may be obtained, the court may vacate the sale and direct another to be had, of which notice must be given, and the sale in all respects conducted as if no previous sale had taken place; if an offer of ten per cent. more in amount than that named in the return be made to the court in writing, by a responsible per-

son, it is in the discretion of the court to accept such offer and confirm the sale to such person, or to order a new sale."

Section 1669, Wilson's Rev. & Ann. St. 1903 (section 5325, Comp. Laws 1909), provides, among other things:

"If it appear to the court that the sale was legally made and fairly conducted, and that the sum bid was not disproportionate to the value of the property sold, and if a greater sum, as above specified, cannot be obtained, or if the increased bid mentioned in the second preceding paragraph be made and accepted by the court, the court must make an order confirming the sale and directing conveyance to be executed."

A proper construction of the foregoing provisions is therefore necessary to correctly determine the question presented.

In *Re Robinson's Estate*, 142 Cal. 152, 75 Pac. 777, cited by plaintiff in error, the sale made was under a power in the will; and it was said by the court that the purchaser there dealt with the executor as he would with any other vendor, except that the court must confirm the sale. An appeal was there prosecuted by an unsuccessful bidder for the property, and we do not consider the case as being in point.

The other case relied upon is *In re Leonis' Estate*, 138 Cal. 194, 71 Pac. 171. The sale there was one made by an administrator for the purpose of paying the debts, expenses, and charges of administration, as well as for the best interests of the estate. The sale was made and report thereof returned into court, to which two of the heirs of deceased made objections, on the ground that the sum bid was disproportionate to the value of the property. The court declined to hear any evidence upon the return of the sale, and refused to confirm the sale. None of the things named in the statute as a reason for vacating the sale were proven or admitted. The court held that the heirs and other persons interested in the estate had the right to share in all the funds enumerated in the statute as a reason why the sale should not be confirmed, but added:

"If the amount of appellant's bid is disproportionate to the value of the property, and a sum exceeding such bid by ten per cent. can be obtained, the court will not confirm the sale. In this way the rights of the appellee under his bid will be duly

guarded, and only molested in the manner pointed out in the statute."

The conclusion arrived at by the court was that "the order vacating and setting aside *the order of sale* is void. The order refusing to hear testimony and denying a confirmation of the said sale should be reversed, and the court below directed to proceed *with the hearing upon the return of sale and the objections thereto."* (Italics ours.)

We do not understand that the effect of this opinion is as contended for by plaintiff in error. Neither do we understand that the court has no authority to refuse to confirm a sale, where the sum bid was disproportionate to the value, where it is not shown that a sum exceeding such bid at least ten per cent., exclusive of the expenses of the new sale, may be obtained; but if the effect of that opinion may be construed to so hold, then we refuse to follow it. While the statute authorizing the sale of the real estate of minors is the same as that authorizing the sale made on behalf of a guardian, the reason therefor and the power and discretion vested in the court differ materially. The considerations governing courts in approving or rejecting sales reported for confirmation, in connection with sales made by executors or administrators, for the payment of debts, are applicable, to a limited extent, to sales by guardians. Where the sale is compulsory, as it may be, if the proceeds are needed for the payment of debts of the ward, or for support and education, mere inadequacy of price ought not to be, ordinarily, sufficient to authorize the rejection of the sale, unless the court be satisfied that upon a resale a better price would be obtained. Woerner's American Law of Guardianship, p. 277. Here the petition does not disclose the purpose of the sale, though no objection is urged on that account.

In *Re Jack's Estate,* 115 Cal. 203, 46 Pac. 1057, the sale was made by a guardian of a minor. The return of sale showed that the same was regularly made and fairly conducted, but that the sum bid was disproportionate to the value of the property sold. The return coming on to be heard, the purchaser increased her bid $3 per acre, and thereupon asked that the sale be confirmed.

Witnesses were called and an examination had with reference to the value of the property; and, after due consideration, the court found that the sum originally bid and the increased bid were disproportionate to the value of the property sold, and that it would be to the best interests of the minor and his estate to vacate the sale and refuse to accept the offer, which was accordingly done. From this order, the purchaser appealed. The court considered the testimony taken on the hearing of the return as to the value of the property, and concluded by saying that it was for the court below to determine what were the facts, and that the conclusions reached could not be disturbed on appeal. The case is similar in many respects to the one under consideration, except that here, in the proceedings in the county court, the guardian reported that the sum of $1,000, the purchase price for three-fourths interest in 210 acres of land, was not disproportionate to its value. However, the guardian, on appeal to the district court, filed his written protest against the order of confirmation, in which he stated that he did not know the real value of the lands originally proposed to be sold, and that the return of sale was based upon the government appraisal thereof, and the amount that other lands contiguous thereto were bringing at the time, and that upon investigation he found that the amount bid *was* disproportionate to the value thereof. The testimony authorized the action of the court in refusing to confirm the sale, under authority of *In re Jack's Estate, supra,* and it is not necessary and would serve no useful purpose to extend this opinion by referring to the testimony of the witnesses.

In *Re Reed's Estate,* 3 Cal. App. 142, 85 Pac. 155, it was said:

"The remaining objection is based upon an incorrect construction of the statute, which authorized the court, in its discretion, to set aside the sale, 'if an offer of ten per cent. more in amount than that named in the return be made to the court, in writing, by a responsible person.' *Estate of Robinson,* 142 Cal. 157, 75 Pac. 777. There is nothing in the decision in *Estate of Leonis,* 138 Cal. 194, 71 Pac. 171, inconsistent with this view; that case dealt with a different provision of the statute. In the present case, a written offer of 10 per cent. more than the amount named in the return was made by the appellant himself; and it

was then in the discretion of the court, under the provisions in question, either to accept such offer and confirm the sale, or to order a new sale. It is, indeed, claimed by the appellant that his bid was the result of a mistake. But this, we think, is immaterial; nor do we think that the court was bound to accept the offer."

It will be noted that the decision in *Re Jack's Estate* was rendered prior to, and that of *In re Reed's Estate* subsequent to, the decision of the Supreme Court in *Re Robinson's Estate.* If, as held in *Re Reed's Estate, supra,* the court has authority to exercise its discretion in refusing to confirm and in vacating and setting aside the sale, where the original bid was increased ten per cent., it would be preposterous to say that a sale reported, where no increased bid was made, and where, upon hearing had, the court found from the testimony produced that the bid was disproportionate to the value, must, at all events, be approved. In other words, that the court would have a discretion to accept or reject an advantageous sale, but would have no authority to reject one which brought as much as ten per cent. less. Such argument does not commend itself, and leads to an absurd conclusion. In *Commonwealth v. Kimball,* 24 Pick. (Mass.) 370, 35 Am. Dec. 326, it was said by Shaw, C. J., that, where a proper construction would lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the Legislature to avoid such conclusion.

It is said, in Rorer on Judicial Sales, secs. 108, 110, that the courts are clothed with an unlimited discretion to confirm a judicial sale or not, as may seem wise or just. Confirmation is final consent, and, the court being the vendor, it may consent or not, at its discretion. The matter of confirmation rests peculiarly upon the wise discretion of the court, in view of all the surrounding facts and circumstances, to be exercised in the interest of fairness, prudence, and the rights of all concerned; and it is difficult to come to any absolute legal rule on the subject, other than that of a sound legal discretion. Among other reasons assigned by the writer, whereby approval of judicial sales may be

denied, is that of a sale at a price disproportionate to the real value. In this connection the author says:

"And so, generally, whatever, and even less than,. is sufficient to set a sale aside after its consummation will, of course, upon the same principle, if known, cause confirmation to be denied."

This rule is in full consonance with the position occupied by the county court toward minor children.

It cannot be successfully urged that a fair construction of our statute deprives the county courts of the exercise of a sound discretion in the matter of the approval of sales of the estates of minors. The very purpose of the statute controlling the appointment of guardians and authorizing the sale of their lands was the protection and best interests of the minor. Where such is the case, the rule of construction should be as laid down by the Court of Appeals of New York, in *People ex rel. Wood v. Lacombe,* 99 N. Y. 43, 1 N. E. 599, where the court said:

"That, where it is apparent that a strict construction of a statute would defeat the main purpose and object, not only of the statute, but of other legislative enactments which relate to the same subject, and which had been enacted in pursuance of and according to a general purpose of accomplishing a particular result, such interpretation should not be upheld, as it would be absurd to say that the lawmakers designed to secure a result that would be antagonistic to their plain and clear intention."

Probate courts have a broad discretion in the matter of approving and disapproving sales of infants' real estate, by a guardian, inasmuch as title does not vest in the purchaser until the sale is approved. Cyc. vol. 21, p. 136; *McCallum v. Chicago Title & Trust Co.,* 203 Ill. 142, 67 N. E. 823. In the Illinois case cited, the discretion of the probate court was conceded in the opinion, and the court held that a confirmation of the sale would have proven a loss to the estate of the ward; hence the court did not abuse its discretion in disapproving the report. It is said, in Woerner on the American Law of Administration, sec. 478, that much discretion is necessarily vested in the judge in passing upon the report of the administrator's sale. *Harkrider v. Bonham,* 88 Va. 247, 16 S. E. 159. The exact question has not, prior to this time, been before this court; but in *Brig-*

*man v. Cheney,* 27 Okla. 510, 112 Pac. 993, an appeal was taken from the order appointing a guardian. It was said by the court that in the matter of the appointment of guardians the county courts are vested with a sound discretion; and their judgments in such case will not be overruled, unless it is apparent that there has been an abuse of such discretion.

In *Wilson, Guardian, v. Morton et al.,* 29 Okla. 745, 119 Pac. 213, in a guardian's sale made under section 22 of the act of April 26, 1906 (Act April 26, 1906, c. 1876, 34 St. at L. 145), it was said:

"The suggestion that this conclusion lodges a large discretion and unrestrained power in the courts of Indian Territory, and the county courts of the state, succeeding the courts of Indian Territory in this jurisdiction, does not militate against the construction of the statute."

The court there held that, where sales of allotted lands have been authorized, subject to the approval of some designated agent or the authority of the government, the effect had been to lodge in some officer a broad discretion, to be exercised in determining whether such sales should be approved.

If, in the first instance, the court should exercise a very wide discretion in the appointment of a guardian, *a fortiori* should a sound discretion be vested in the court in approving a sale of the estate of the ward. The wards in this case are minor Indian children; and, when we consider the policy of the federal government and the numerous restrictions and limitations put upon adult allottees in the matter of the alienation of their allotments, it would be passing strange, indeed, if the Indian minors were to be without protection from the courts in the sale of their estates.

It is alleged by counsel for plaintiff in error that this court will not adopt a rule that the confirmation of guardians' sales may be left to depend upon the caprice and unsound discretion of a court, but that instead it be rested upon the law. The statement is unwarranted; there being nothing in the record to justify such a conclusion. That the discretion exercised by the court should be a reasonable one, and not the use of an arbitrary power, we agree; but we do not concede that, where the facts show that

the lands offered for sale are .within the inclosure of the pur-
chaser, and where but one bid was made, and it is found to be
disproportionate to the value of the lands, that bidder has a right
to demand and compel the court to confirm the sale. To so hold
would be a travesty on the name of the law, and would justify
and tend to bring the courts into disrepute.

County courts in this state, particularly the part thereof
formerly comprising the Indian Territory, where a large portion
of the lands yet belong to minor allottees, owe a duty to the
state and to society, and to these dependents, to see that their
estates, as is so often the case, are not dissipated. The clamor
(though not made in this case) that the progress and develop-
ment of the state and business interests demand a change in the
land tenures is no answer to that of right and justice towards
these dependents. Standing *in loco parentis,* the courts should
be ever vigilant and watchful in behalf of these wards. The
wholesale sale of minors' lands is not only a great mistake, but
a reflection on the administration of our laws, and is an abuse
that demands early attention from those responsible for the
laxity of the system under which such wrongs are possible. Lim-
ited sales may be, and, perhaps, are, in many instances war-
ranted. But it should be kept in mind that no other character
of investment is of so stable a character, none so sure, as a
rule, of an appreciation in value. These lands can and should,
where possible, be rented, not sold; by the former, the minor
is given a fixed income and insured a competence at all times.
The true object of the courts in exercising this vast and respon-
sible jurisdiction should be the best interests of the minor, with-
out regard to other considerations. When it does become neces-
sary, or is deemed advisable, that the real estate of such minors
shall be sold, every effort should be taken to see that the land
sold brings its full value, and the sum realized safeguarded and
protected for the benefit of the minors. The sale should only
be approved when the return shows that the proceedings were
fair and the sum not disproportionate to the value; and in reach-
ing this conclusion the court should not be governed solely by
the return of the guardian, but should make such independent

investigation and procure such evidence of its fairness in all respects as will warrant it in acting upon the return as a matter of conscience and right.

We find no error in the record, and the judgment of the trial court should therefore be affirmed.

By the Court: It is so ordered.