## GANNON *v.* JOHNSTON ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 131. Argued December 22, 1916.—Decided March 6, 1917.

Under the Choctaw-Chickasaw supplemental agreement of July 1, 1902, §§ 11, 12, 15 and 16, 32 Stat. 641, surplus lands, selected by a member of the Chickasaw Tribe, become alienable only with the expiration of the respective periods after patent fixed in § 16; these restrictions accompany the land when it passes to a tribal member by inheritance, and a conveyance by him while the periods are running is void. *Mullen* v. *United States,* 224 U. S. 448, distinguished.

The Act of April 26, 1906, 34 Stat. 137, in providing that conveyances of allotments made after selection should not be declared invalid solely because made prior to patent, was not intended to validate deeds made before removal of restrictions on alienation; on the contrary it expressly declares them null and void.

40 Oklahoma, 695, affirmed.

THE case is stated in the opinion.

*Mr. H. A. Ledbetter,* with whom *Mr. F. M. Adams, Mr. D. M. Bridges* and *Mr. John Vertrees* were on the brief, for plaintiff in error.

*Mr. A. C. Cruce, Mr. F. E. Kennamer, Mr. Chas. A. Coakley, Mr. Guy Green* and *Mr. Cham Jones* for defendants in error, submitted.

MR. JUSTICE DAY delivered the opinion of the court.

The case in the state court was begun in the District Court of Jefferson County, Oklahoma, in 1911, by D. R. Johnston, against C. E. Gannon, for the recovery of certain lands, originally allotted in 1903 to Agnes Wolfe,

a full-blood Chickasaw Indian. Afterwards, by amended petition, Wilburn Wolfe was made a party plaintiff. To this amended petition answer was filed by Gannon, asserting his title, and upon issues being made up judgment was rendered in favor of Johnston and Wolfe as to the "surplus allotment" of said Agnes Wolfe; and of Gannon as to the "homestead allotment." Upon writ of error, the Supreme Court of Oklahoma affirmed the judgment (40 Oklahoma, 695), and the case is here upon writ of error to the last-named court. The decision as to the surplus lands is all that is called in question.

The lands in controversy were allotted to Agnes Wolfe, the certificate of allotment bearing date July 7th, 1903; the patent was signed by the Governor September 12th, 1905, and approved by the Secretary of the Interior October 7th, 1905. Upon her death in 1903, the title passed to her brother and sole heir at law, Wilburn Wolfe, defendant in error here. The Supreme Court finds that it fairly appears from the record that the allotment was selected in the lifetime of Agnes Wolfe.

Upon October 13th, 1903, for a consideration of $1,050.00, Wilburn Wolfe executed and delivered to one A. J. Waldock a warranty deed for the lands; several transfers of this title were made through various persons and corporations until, on November 30th, 1907, it was acquired, by warranty deed, and for a good and valuable consideration, by C. E. Gannon, plaintiff in error. Since that date he has been in possession and control of the lands and has received the profits therefrom, either personally or by agents and tenants.

Upon January 4th, 1909, Wilburn Wolfe executed and delivered to D. R. Johnston a warranty deed for the lands in controversy, which deed was approved by the County Judge of Pontotoc County, Oklahoma, on March 23d, 1909, and by the Secretary of the Interior on July 2d, 1910, in accordance with the laws of Con-

gress, and it is through this deed that Johnston asserts his title.

The correctness of the decision of the Supreme Court of Oklahoma turns upon the question whether when Wilburn Wolfe made his deed to A. J. Waldock, Wolfe was competent to convey title to the surplus lands, it being conceded that the title of the plaintiff in error was derived through the grantee in the Waldock deed.

This inquiry involves a consideration of §§ 11, 12, 15, and 16 of the supplemental agreement between the United States and the Choctaw and Chickasaw Indians, approved July 1st, 1902, 32 Stat. 641. Section 11 provides for allotting to each member of these tribes land equal in value to 320 acres of the average allottable land, and to each freedman land equal in value to 40 acres of the average allottable land. Section 12 provides that at the time of the selection each member of the tribes shall designate as a homestead out of such allotment 160 acres, which shall be inalienable "during the lifetime of the allottee, not exceeding twenty-one years from the date of certificate of allotment, and separate certificate and patent shall issue for said homestead." Sections 15 and 16 are as follows:

"15. Lands allotted to members and freedmen shall not be affected or encumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this Act, nor shall said lands be sold except as herein provided.

"16. All lands allotted to the members of said tribes, except such land as is set aside to each for a homestead as herein provided, shall be alienable after issuance of patent as follows: One-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years; in each case from date of patent: *Provided*, That such land shall not be alienable by the allottee or his heirs at any time before the expiration of the Choctaw

and Chickasaw tribal governments for less than its appraised value."

The provisions of these sections, it seems to us, lead to the conclusion that Congress intended to make them binding upon the surplus lands not only in the lifetime of the allottee, but as well during the periods named when the lands might descend as in this case to and be owned by a member of the tribe. Section 15 is positive in its requirement that lands allotted to members shall not be sold except as in the act provided. Section 16 makes the land alienable after the issuance of patent, except as to the homestead, not involved here, one-fourth in acreage in one year, one-fourth in three years, and the balance in five years from the date of the patent, and provides that the lands shall not be alienable by the allottee, "or his heirs," at any time before the expiration of the Choctaw and Chickasaw tribal governments for less than the appraised value.

It seems quite clear that in thus enacting a statute for the protection of a dependent people, Congress intended to bind the surplus lands in the hands of the heirs as well as when in the ownership of the original allottee, and to make such land inalienable during the periods named. Congress intended to prevent improvident sales of the lands, and distributed the right of alienation over a period of years, giving the right to sell at the appraised value and in the quantities named. In view of the positive provision of § 15, and its prohibition of alienation except as permitted in the act, we think Congress manifested its intention to make any other alienation void.

Counsel for plaintiff in error rely very much in support of their contentions upon the case of *Mullen* v. *United States*, 224 U. S. 448. But that case dealt with an allotment of lands under § 22 where provision is made for allotment in the right of a member of the tribe who has died subsequently to the ratification of the agreement

and before receiving an allotment. Because of the difference between § 22 and the other sections it was held that there was no restriction upon the right of the heirs to make the conveyance in question.

The later case of *Bowling and Miami Investment Co.* v. *United States*, 233 U. S. 528, dealt with restrictions like those under consideration now. . The Secretary of the Interior was authorized to make an allotment to each member of the tribe, subject to the restriction that the land should not be subject to alienation for the period of twenty-five years from the date of the issuance of the patents, and that the patents should recite in the body thereof that the land described and conveyed should not be alienated for twenty-five years from its date, and that any contract or agreement to sell or convey such allotments so patented entered into before the expiration of said term of years should be null and void. Of such restrictions, Mr. Justice Hughes, who also wrote the opinion in the *Mullen Case*, speaking for the court, said, at page 535:

"The question then is, whether the restriction imposed by the act of 1889 was a merely personal one, operative only upon the allottee, or ran with the land binding his heirs as well. This must be answered by ascertaining the intent of Congress as expressed in the statute. The restriction was not limited to 'the lifetime of the allottee,' as in *Mullen* v. *United States*, 224 U. S. 448, 453, nor was the prohibition directed against conveyances made by the allottee personally. Congress explicitly provided that 'the land so allotted' should not be subject to alienation for twenty-five years from the date of patent. 'Said lands so allotted and patented' were to be exempt 'from levy, sale, taxation, or forfeiture for a like period of years.' The patent was expressly to set forth that 'the land therein described and conveyed' should not be alienated during this period, and all contracts 'to sell or convey

such land' which should be entered into 'before the expiration of said term of years' were to be absolutely void. These reiterated statements of the restriction clearly define its scope and effect. It bound the land for the time stated, whether in the hands of the allottee or of his heirs."

We think this principle is controlling here, and that it was the intention of Congress to make a restriction which should bind the surplus lands, whether in the hands of the original allottee in his lifetime or of his heirs after the decease of the original allottee during the periods named. The restriction was upon alienation of the lands as such, and was not merely personal to the allottee any more than it was in the *Bowling Case.*

In the Act of 1906, validating conveyances made by the members of the Five Civilized Tribes, 34 Stat. 137, where it was provided that conveyances made by members of the Five Civilized Tribes subsequent to selection of allotment and removal of restrictions where patents thereafter issue should not be declared invalid solely because the conveyances were made prior to the issuance and delivery of the patents, it was nevertheless provided that deeds executed or contracts entered into before the removal of restrictions should be null and void.

A contention that many investments have been made upon a construction of the law differing from that given in this case by the Supreme Court of Oklahoma, and that such construction and the common understanding of the bar have operated to establish a rule of property which cannot be changed was denied by the Supreme Court of Oklahoma and rightly so. The matters relied upon were inadequate to overcome the meaning of the statutory provisions in question.

A contention that the deed from Wolfe to Johnston was champertous within the statute of the State was considered and decided by the Supreme Court of Oklahoma

in the light of its own and other decisions, and the holding of the court did not, in our opinion, involve the denial of a federal right such as would make that ruling reviewable here.

We think the federal questions involved were correctly decided, and affirm the judgment of the Supreme Court of Oklahoma.

*Affirmed.*