## BURTSCHI et al. v. WOLFE et al.

No. 9672—Opinion Filed Jan. 8, 1921.

Rehearing Denied May 17, 1921.

(Syllabus.)

### Indians—Inherited Lands—Conveyance by Minors—Validity.

In an action for the recovery of land commenced by W. and S. against B. and B. the evidence disclosed substantially the following facts: The land in controversy consisted of both the homestead and surplus allotments of S., a duly enrolled Chickasaw Indian of less than full blood, who died on or about the 28th day of September, 1905, after receiving his allotment, leaving surviving her, H. S., her husband, and W. and S., her infant son and daughter, respectively. After the death of the allottee and the passage of the act of Congress of April 26, 1906, H. S. made a separate conveyance of his curtesy right to H., and thereafter died before the commencement of the action. Some time after the execution of the conveyance by H. S., a guardian was appointed for W. and S. in the United States court for the Southern district of Indian Territory sitting at Purcell, and thereafter a petition was filed praying for permission to sell at guardian's sale the interest of S. and W. in said inherited land. Thereafter an order was made directing the guardian to sell said land at guardian's sale, which was done. Whereupon a guardian's deed was duly executed conveying the land to H. It was through this guardian's sale to H. that B. and B. deraigned their title, and it is conceded that if the interest of the minors in the land passed to H. by virtue of this sale the cause should be reversed, otherwise it should be affirmed. The trial court held that section 22 of the act of Congress of April 26, 1906, 34 St. at L. 137, provides the only means whereby a minor of any degree of Indian blood may be divested of the title to his inherited lands, and that, inasmuch as the minor heirs did not join in the sale by H. S., the separate sale of the minor heirs was invalid as to both the homestead and surplus allotments. Held, error in so far as the ruling affected the sale of the homestead allotment.

Error from District Court, McClain County; F. B. Swank, Judge.

Action by Mary F. Wolfe against Julius L. Burtschi and another for recovery of land; Ennett Shields and J. C. Hybarger be-

ing made parties to action. Judgment for Wolfe and Shields, and Burtschi and another bring error. Reversed and remanded.

Geo. E. Swisher, for plaintiffs in error.

Robt. Wimbish and W. C. Duncan, for defendant in error Wolfe.

C. T. Rice, for defendant in error Shields.

KANE, J. This was an action commenced by Mary Wolfe, a three-fourths blood Chickasaw Indian, against the plaintiffs in error, for the recovery of certain specific tracts of land. Subsequent to the commencement of this action, Ennett Shields, a brother of Mary Wolfe, and J. C. Hybarger were made parties, and when the cause came on for trial upon the issues joined by the pleadings judgment for the recovery of the land was rendered in favor of Mary Wolfe and Ennett Shields, to reverse which this proceeding in error was commenced.

The land in controversy constituted both the homestead and surplus allotments of Melissa Brown Shields, a duly enrolled Indian of less than full blood who died on or about the 28th day of September, 1905, after receiving her allotment, leaving surviving her her husband, Henry Shields, and her minor children, Ennett Shields and Mary Wolfe. After the death of the allottee and the passage of the act of April 26, 1906, Henry Shields, the husband, made a separate conveyance of his curtesy right to J. C. Hybarger and thereafter died before the institution of this action. Sometime after the execution of the conveyance by Henry Shields, one J. W. Gillett was appointed guardian of Ennett Shields and Mary Wolfe in the United States court for the Southern district of Indian Territory sitting at Purcell, and after this appointment was made a petition was filed praying for permission to sell the interest of Ennett Shields and Mary Wolfe in said land. Thereafter an order was made directing the guardian to sell said land at guardian's sale, which was done, and thereafter said sale was confirmed by the court. whereupon the guardian executed a deed to said land to J. C. Hybarger. It was through this guardian's sale to Hybarger that the Burtschis deraigned their title, and it is conceded that if the interest of the minors in the land passed to Hybarger by virtue of this sale, then the cause should be reversed; otherwise it should be affirmed.

The trial court held that section 22 of the act of Congress of April 26, 1906, 34 St. at L. 137, provides the only means whereby a minor of any degree of Indian blood may be divested of title to inherited lands, and inasmuch as the minor heirs did not join in the sale of the adult heir, the separate sale by the minor heirs was invalid as to both the homestead and surplus allotment.

The part of section 22, supra, necessary to notice reads as follows:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory."

We are unable to agree with the construction placed upon this act by the trial court. It is settled beyond controversy that, while Indian heirs, both adult and minors, prior to the passage of this act, inherited the surplus allotment burdened with certain restrictions, they took the homestead portion of such allotment entirely free from restrictions. Gannon v. Johnston, 40 Okla. 685, 140 Pac. 430, affirmed in Gannon v. Johnston, 243 U. S. 108; Mullen v. United States, 224 U. S. 448. Starting from this as an established premise, it seems quite clear to us that it was not the purpose of the part of section 22 applicable to the case at bar to impose or reimpose any additional restrictions upon the person or the inherited lands of the class of Indians herein involved, to wit, minors of less than full blood. Obviously the primary purpose of the act was to remove restrictions from inherited lands. The act was probably passed under the erroneous view, quite prevalent at the time, that the restrictions imposed upon allotted lands in the hands of the allottee followed the land into the hands of the heirs, and hence the general terms of the first part of the act removing restrictions from all adults heirs. The second part of the act, that relating to minor heirs, was undoubtedly passed for the purpose of facilitating the sale of inherited lands by adult heirs. In that case both adult and minor heirs were empowered to sell their inherited land, both surplus and homestead; the latter by joining in the sale by guardian duly appointed by a proper United States court of the Indian Territory. Clearly the act down to this point was an act removing, not imposing, restrictions. Before its passage, both adult and minor heirs were authorized to sell and convey the homestead part of the allotment. The former because they were

adult citizens of the state and of the United States, and there were no restrictions upon the inherited homestead. While a minor Indian was still under the usual disabilities imposed upon infants by the laws of Arkansas extended over the Indian Territory by the act of Congress, his unrestricted inherited land was subject to sale in the same manner as the lands of white minors; that is, for his care, education, and maintenance as provided by the extended statute.

In this situation the applicable part of section 22 herein quoted had the effect of removing all restrictions upon the sale of inherited lands by adult heirs of less than full blood and of removing certain restrictions from minor heirs by permitting them to sell both their inherited homestead and surplus lands merely by joining in the sale "where there are both adult and minor heirs."

The act of Congress of April 28, 1904,, 33 Stat. at L, 573, provides:

"All the laws of Arkansas heretofore put in force in the Indian Territory are hereby continued and extended in their operation, so as to embrace all persons and estates in said territory, whether Indian, freedman, or otherwise, and full and complete jurisdiction is hereby conferred upon the district courts in said territory in the settlements of all estates of decedents, the guardianships of minors and incompetents, whether Indians, freedman, or otherwise."

In Taylor v. Parker et al., 33 Okla. 199, 126 Pac. 573, affirmed in Taylor v. Parker, 235 U. S. 42, it was held:

"The effect of the act of April 28, 1904, (33 St. at L. 573, c. 1824), was to make the laws of Arkansas, theretofore put in force in the Indian Territory, applicable to another class of persons and estates. to wit, Indians and their property, in so far as it was alienable under the acts of Congress then bearing upon it. The extension of the law of wills enabled the Indian to devise all his alienable property by will made in accordance with the laws of the state of Arkansas. but did not operate to remove any of the restrictions theretofore placed upon lands of Indians by act of Congress."

We may paraphrase this excerpt from the opinion and apply it to the case at bar with the following result: The extension of the laws of Arkansas pertaining to guardian and ward over the Indian Territory enabled the Indian to dispose of his alienable lands at guardian's sale held in accordance with the laws of the state of Arkansas. This was the situation when section 22, supra, was enacted. Without reading restrictions into this

section which it does not in terms contain, we are unable to perceive that the latter act interferes in any manner with the right previously possessed by the minor of selling his unrestricted lands pursuant to the applicable law of the state extended and put in force in the Indian Territory by the previous act of Congress.

It seems inconceivable that Congress intended to make the right of an Indian minor to sell his unrestricted land turn exclusively upon the circumstances, unimportant to the minor, that there were adult heirs with whom he might join in the sale, and to abrogate the more important right already possessed of selling and disposing of his unrestricted lands for the ordinary purpose of education, care, and maintenance. There is some contention that this ruling is in conflict with the ruling of the Supreme Court of the United States in Tiger v. Western Investment Co., 221 U. S. 286; Brader v. James, 246 U. S. 88, and other cases of this class. We perceive no such conflict. In the cases referred to, the parties plaintiff were full-blood adult Indian heirs, and the question was whether conveyances of inherited lands made by such Indians were valid without the approval of the Secretary of the Interior as provided by the latter part of section 22, supra. It was said:

"The approval by the Secretary of the Interior which by the act of April 26, 1906 (34 St. at L. 137, chap. 1876), sec. 22, is made a condition of a valid conveyance by the heirs of a deceased allottee of either of the Five Civilized Tribes, must be obtained in the case of land as to which the original restriction upon alienation by the allottee or his heirs had expired before its enactment."

The part of the act particularly applicable to the Indian heirs in that situation reads as follows:

"All conveyances made under this provision (sec. 22) by heirs who were full-blood Indians are to be subject to the approval of the Secretary of the Interior under such rules and regulations as he may prescribe."

As the act, although declaratory of, the law as it already existed in regard to inherited homesteads, provides in general terms for the removal of restrictions from both the inherited homestead and surplus lands of all adult heirs, it may very well be said that all sales of inherited lands made by adult heirs after the passage of the act are made under the provision of the act. It is, as we have seen, "all conveyances made under this provision by heirs who were full-blood Indians" that are subject to ap-

proval by the Secretary of the Interior. But the same reasoning does not apply to minor heirs of less than full blood. The part of the act applicable to minor heirs provides for the sale of inherited lands by minors in only one circumstance, that is, where there are both adult and minor heirs, and in one manner, that is, by joining in the sale. But this part of the act, as we have seen, does not in terms interfere with the usual rights of minors in ordinary circumstances. It is only conveyances made under the act that are affected thereby, to wit: (a) Conveyances made by all adult heirs; and (b) conveyances made by minor heirs by joining in the sale where there are both adult and minor heirs.

As was said by the Supreme Court of the United States in the recent case of Harris v. Bell (decided Nov. 15, 1920), not yet officially reported:

"A guardianship carries with it exclusive power to direct the guardian and supervise the management and dispose of the ward's property. It is so in Oklahoma. This is so widely recognized and so well grounded in reason, that a purpose to depart from it ought not to be presumed unless manifested by some very clear and explicit reason."

We have more difficulty in harmonizing the reasoning in Talley v. Burgess, 246 U. S. 104, with the reasoning whereby we practically reach the same conclusion. In that case it does not appear whether there were both adult and minor heirs, but it does appear that the instrument involved, to wit, a contract involving the title to land inherited by a minor Indian of less than full blood made by the guardian with a firm of lawyers, was not joined in by any other heirs. While the applicability of section 22 to the situation thus presented is not entirely clear to us, we have no difficulty in agreeing with the conclusion reached. The land involved in that case, as in this, was free from all restrictions except those incident to the ordinary disabilities of minority, and therefore, the court held, were subject to sale or conveyance for the benefit of the minor under the applicable law governing guardian and ward. "It is not denied," says the learned Justice who delivered the opinion for the court, "that the United States court for the territory would have had jurisdiction of a proceeding by a guardian for an order to sell the ward's interest in the land."

In reaching this conclusion we reject the premise assumed by counsel for the defendants in error that, before an Indian is entitled to sell his lands, either inherited or allotted, we must be able to point our finger to some act of Congress specifically authorizing such sale. In our judgment the opposite presumption is true. Indians, unless they are restricted, either in their person or their property, by some specific act of Congress or applicable state law, have the same right to dispose of their property as white citizens of the state and of the United States. It is true that where either specific personal or property restrictions have been imposed by law, acts removing such restrictions must be liberally construed in favor of the Indian. But where there are no restrictions imposed by law, the court is not justified in assuming their existence. Welch v. Ellis, 63 Okla. 158, 163 Pac. 321. Although the precise question we have now decided has not heretofore been passed upon by this court, there is reasoning in some of the cases which might possibly lead to an opposite conclusion. We particularly refer to Wilson v. Morton et al., 29 Okla. 745, 119 Pac. 213, and Lulu, Seminole, v. Powell, 64 Okla. 200, 166 Pac. 1050. In the first of these cases there were both adult and minor heirs, and we think the court correctly held that section 22 was applicable and that the sale was made in substantial compliance with the section. We are unable to agree, however, with that part of the opinion, which was purely dictum, that holds that section 22 prescribes the sole procedure to be followed in making sales of inherited lands by Indian minors of less than full blood.

The facts in the Lulu, Seminole, Case seem to make it more directly in point. In that case the heirs appear to be less than full blood, and there were no adult heirs. Clearly that was not a conveyance made by minors under the provision of section 22, supra, by joining in the sale, and the court would have been right in holding the sale invalid if, as it erroneously assumed, the case was controlled by Brader v. James, supra.

We agree with that part of the opinion wherein it is held that:

"Where the allottee died prior to the passage of the act of April 26, 1906, title passed to the heirs free of such restrictions without regard to the degree of Indian blood of the heirs or whether they were adults or minors; and prior to the passage of the act of April 26, 1906, the probate courts had jurisdiction to authorize and confirm a separate sale by guardian of such inherited interest of a minor in the homestead independent of a sale by the adult heirs, under procedure applicable to minors generally."

We think this excerpt correctly states the law of that case, and that it also correctly

states the law of this case, and that this situation was in no wise changed by the passage of section 22, supra, or of anything that has been decided in Brader v. James, or the other cases of this class.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded, with directions to proceed in accordance with the views herein expressed.

HARRISON, V. C. J., and JOHNSON, McNEILL, HIGGINS, and BAILEY, JJ., concur. PITCHFORD, J., concurs in the result, but is of the opinion that the ruling of the trial court was erroneous as to both the homestead and surplus allotment. COLLIER, J., dissents.