## DRUMMOND v. UNITED STATES.
### No. 2525.

Circuit Court of Appeals, Tenth Circuit.

Nov. 4, 1942.

Wm. S. Hamilton, of Pawhuska, Okl. (Matthew J. Kane, of Pawhuska, Okl., on the brief), for appellant.

Norman MacDonald, Atty., Department of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Vernon L. Wilkinson, John F. Cotter, and Donald R. Marshall, Attys., Department of Justice, all of Washington, D. C., on the brief), for the United States.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

U-til-la was enrolled as Kaw allottee No. 59. Under the Act of July 1, 1902, 32 Stat. 636,[1] 160 acres of land, situated in Kay County, Oklahoma, were allotted to him as a homestead. The allotment was conveyed to him by a restricted deed from Wah-shun-gah, head chief of the Kaw Tribe, dated May 1, 1903. Under the provisions of the Act and the deed, the homestead was nontaxable and inalienable for a period of 25 years from January 1, 1903. The period of nontaxability and inalienability was extended for an additional period of 20 years by the Act of May 27, 1924, 43 Stat. 176.

U-til-la died June 22, 1914, leaving a will dated June 5, 1914, which had been approved by the Assistant Secretary of the Interior, by which he devised a one-third interest in the allotment to his common-law wife, Augustine Black, a full-blood member of the Osage Tribe of Indians enrolled opposite roll No. 474, and two-thirds to his daughter, May Straight Up (Mary Black). May Straight Up was a full-blood member of the Osage Tribe enrolled opposite roll No. 2097. She died intestate on May 18, 1928. At the time of her death she was known as Mary Black DeRoin and was a resident of Osage County, Oklahoma. Her estate was administered in the county court of Osage County, Oklahoma. On December 16, 1929, the county court made and entered its judgment adjudging Frank DeRoin and Mildred DeRoin to be the legal heirs of May Straight

Up, and that Frank DeRoin as the surviving husband of May Straight Up was entitled to an undivided one-half interest in the two-thirds interest of May Straight Up in the allotment, or an undivided one-third interest in the entire allotment. Frank DeRoin was a member of the Otoe Tribe of Indians. R. C. Drummond obtained a judgment against Frank DeRoin. Execution issued on the judgment and levy was made on Frank De-Roin's interest in the allotment. On April 26, 1936, the sheriff of Kay County, Oklahoma, executed and delivered to Drummond a sheriff's deed to an undivided one-third interest in the allotment claimed by Frank De-Roin, as heir of May Straight Up. On April 17, 1939, a hearing was held for the purpose of determining the heirs of May Straight Up, and the Assistant Secretary of the Interior determined the heirs of May Straight Up as follows: Vena Barnes DeRoin, 1/6th; Mildred DeRoin, 4/6ths; Norman DeRoin, 1/6th.

Frank DeRoin died intestate February 23, 1938. On April 17, 1939, a hearing was had to determine the heirs of Frank DeRoin. The Secretary of the Interior determined the heirs of Frank DeRoin to be as follows: Vena Barnes DeRoin, 1/3rd; Mildred DeRoin, 1/3rd; Norman DeRoin, 1/3rd.

The United States brought this action in its own behalf and on behalf of the Indian claimants to cancel the sheriff's deed and to quiet the title to the allotment. From a judgment in favor of the United States, Drummond has appealed.

Section 2 of the Act provides that the Kaw homestead allotments "shall be nontaxable and inalienable for the period of twenty-five years from the first day of January, 1903, except as hereinafter provided," and that "The lands, other than the homestead, set aside to each member shall be free from taxation as long as the title remains in said member, but in no event to exceed twenty-five years, and the same shall not be sold or encumbered in any way before the expiration of ten years from the date of the deed to said member, except as herein provided and with the approval of the Secretary of the Interior." Section 11 of the Act provides "That the adult heirs of any deceased Kansas or Kaw Indian, whose selection has been made or to whom a deed has been

---

[1] An Act accepting, ratifying, and confirming an agreement with the Kansas or Kaw Tribe of Indians. It will be hereinafter called the Act.

issued for his or her share of the lands of said tribe in Oklahoma Territory, may sell and convey the lands inherited from such decedent; * * * all conveyances made under this provision to be subject to the approval of the Secretary of the Interior, * * *."

■ The provisions of the Act must be construed in the light of the obvious policy of Congress to promote the welfare of the Indians as wards of the United States. The provisions for restrictions against alienation evinced the continuance, to that extent at least, of the guardianship which the United States had exercised from the beginning.[2]

■ Subject to the provision for alienation by the heirs of a deceased Kaw allottee with the approval of the Secretary of the Interior, the restrictions against alienation of the homestead were for the absolute period of 25 years and by the extension act, subject to certain exceptions not here material, for an additional period of 20 years. The provisions of the Act, reiterated in the deeds, restricted the land against alienation for the time stated, whether in the hands of the allottee or his heirs or devisees. That such was the intent of Congress is made abundantly clear by the provisions of § 11 of the Act providing for the removal of restrictions against alienation of lands of heirs of deceased Kaw Indians with the approval of the Secretary of the Interior. Provisions in other allotment acts imposing restrictions against alienation, substantially the same as the provisions here involved, have been held not to be mere personal restrictions operating upon the allottee alone, but restrictions running with the land and binding upon his heirs as well for the specified term.[3]

■ It is urged that the restrictions ceased to apply to the homestead allotment after it had passed to Indian heirs who are not members of the Kaw Tribe and that when the one-third interest in the homestead passed to Frank DeRoin, a member of the Otoe Tribe, it was freed of restrictions. It is true that in Levindale Lead & Zinc Mining Co. v. Coleman, 241 U.S. 432,

36 S.Ct. 644, 60 L.Ed. 1080, the court held, under the Osage Indian Allotment Act of June 28, 1906, 34 Stat. 539, that lands which had passed to a non-Indian heir who was a white man were not restricted, but that case is obviously not in point here. The restrictions were imposed for the benefit of Indians, not white people, and would serve no purpose when the lands passed into the ownership of white men. Congress was concerned with the protection of all Indian heirs under guardianship of the United States, whether members of the Kaw Tribe or other tribes. We find nothing in the provisions of the Act indicating an intention to limit the protection of the restrictions to heirs who are members of the Kaw Tribe. It is a well-known fact that when the Kaw Agreement was entered into the Kaws had intermarried with other tribes. It is significant that the provisions of § 11 of the Act, with respect to adult and minor heirs of Kaw Indians, are not limited to heirs who are members of the Kaw Tribe.

■ If the construction is open to doubt, it should be resolved in favor of the Indians.[4] A construction that the interest in the allotment which passed to Frank DeRoin remained subject to restrictions against alienation will further the manifest policy of Congress to protect the Indians against loss of their lands.

■ The Act of February 14, 1913, 37 Stat. 678, 25 U.S.C.A. § 373, provides that any person of the age of 21 years having any right, title, or interest in any allotment held under trust or other patent containing restrictions on alienation shall have the right prior to the expiration of the restrictive period to dispose of such property by will, with the approval of the Secretary of the Interior, but that the approval of the will and the death of the testator shall not operate to terminate the restrictive period. Hence, the death of U-til-la and the approval of his will by the Secretary of the Interior did not operate to terminate the restrictive period.

We conclude that the one-third interest in the allotment which passed to Frank De-

[2] Levindale Lead & Zinc Mining Co. v. Coleman, 241 U.S. 432, 437, 36 S.Ct. 644, 60 L.Ed. 1080.

[3] Bowling and Miami Investment Co. v. United States, 233 U.S. 528, 535, 536, 34 S.Ct. 659, 58 L.Ed. 1080; Gannon v. Johnston, 243 U.S. 108, 111, 37 S.Ct. 330,

61 L.Ed. 622; United States v. Gilbertson, 7 Cir., 111 F.2d 978, 980; Goodrum v. Buffalo, 8 Cir., 162 F. 817, 823.

[4] Taylor v. Tayrien, 10 Cir., 51 F.2d 884, 890; Choate v. Trapp, 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941.

Roin remained subject to restriction against alienation.

The judgment is affirmed.