APRIL TERM, 1946

IN THE MATTER OF THE ESTATE OF MASON RIGBY, DECEASED.

WILLIAM P. McINTOSH,

*Appellant,*

vs.

L. H. ALGER, Administrator of the Estate of MASON RIGBY, DECEASED, AND JAMES L. McINTOSH and CLARENCE GRIEVE,

*Respondents.*

(No. 2323; April 9th, 1946; 167 Pac. (2d) 964)

For the appellant, the cause was submitted on the brief and oral argument of W. E. Hardin of Lander, Wyoming, and C. A. Brimmer of Rawlins, Wyoming.

For the respondents, Grieve and James L. McIntosh, the cause was submitted upon the brief and oral argument of H. S. Harnsberger of Lander, Wyoming. Mr. George F. Dobler of Lander, Wyoming, appeared for the Administrator at the hearing.

## OPINION

KIMBALL, Justice.

The appeal is from an order entered in a probate proceeding for the sale of property by the administrator of the estate of Mason Rigby, deceased.

The lands in which Rigby was interested at the time of his death comprise 1601 acres, usually referred to as "deeded" or "patented" land, and about 1440 acres of state school land leased to Rigby by the state for the term ending March 1, 1949.

When Rigby died his interest in said lands was subject to a lease given May 13, 1941 by him as lessor to Clarence Grieve and James L. McIntosh, lessees, for the term ending May 1, 1946. This lease contains the following provisions wherein the lessor is called first party and the lessees second parties:

"As part of the consideration for entering into this lease and agreement first party hereby gives and grants

to second parties the first right and privilege of again leasing all of the above described lands for another period of five (5) years, at the termination of this lease on such terms as first party shall at that time offer all of said lands for lease and as a further consideration the said first party hereby grants unto said second parties the right and option to purchase all of said above described lands of which first party is then the owner, on such terms as first party shall then demand for purchase price of said lands, it being understood second parties are to have the first right, option and privilege of purchasing said lands from said first party.

"It is understood and agreed between the parties hereto that first party shall have the right to sell the above described patented lands, subject to this lease. * * * *

"This agreement shall run to and be binding upon the heirs, executors and assigns of both parties hereto."

Rigby died intestate in May, 1944, and the administrator of his estate, who is not an heir, was appointed, and had the property appraised, during that month. The real property (1601 acres) owned by Rigby was appraised at $7.50 an acre, and this valuation (total $12,007.50) was intended to include the value of his interest under his lease of the state school lands. The personal property in the estate, except money, was of little value and the sale thereof under the order about to be mentioned is not questioned on the appeal.

On August 15, 1944, after proceedings had pursuant to section 88-3215, R. S. 1931, et seq., the court made an order authorizing the administrator to sell all the property of the estate at either public or private sale to pay debts and charges and expenses of administration, and "to make distribution to the heirs in money, since the said heirs reside in England and will be better satisfied to receive their shares in money". See sections 88-3220, 88-3221, R. S. 1931.

The order, after the description of the real property owned by Rigby, recites and declares that: "All of the above land is subject to a lease in favor of Clarence Grieve and James L. McIntosh, dated May 13, 1941, the term of said lease beginning May 13th, 1941 and ending May 1st, 1946, which lease also grants to said lessees, the first right option and privilege of purchasing said lands, and any sale must be made subject to the terms of the above described lease".

The administrator decided to sell at public sale, and published a notice that the property would be sold at public auction. At the time and place of sale, as stated in the notice, the administrator offered for sale "at public auction for cash to the highest bidder," all the real property of the estate and the lease of state lands, "subject to the lease and option to purchase the real estate as contained in that certain lease and agreement made and entered into May 13, 1941, by and between Mason Rigby, deceased, and Clarence Grieve and James L. McIntosh * * *," and announced that "bids would be received per acre on the patented land, containing 1601 acres, and that if accepted the said bid would carry the lease on state-owned lands held by said estate * * *".

The bidding was opened by James L. McIntosh, one of the lessees in the lease of May 13, 1941, who, for himself and the other lessee, bid $7.50 an acre for the 1601 acres, total $12,007.50. Mrs. Bessie A. McIntosh, acting for her husband, William P. McIntosh, who was not personally present, then bid $8 an acre, total $12,-808.00.

"Thereupon", as recited by the administrator in his report of the proceedings, "the said bidders, Clarence Grieve and James L. McIntosh, claimed they were entitled to purchase the land for the sum bid by William P. McIntosh, since no other bids were offered and they

desired to exercise their rights as contained in the Lease and Agreement, dated May 13th, 1941."

The administrator, by his attorney, then stated that "the matter of determining who was entitled to purchase the property was a matter to be decided by the Judge;" that the administrator would make a full and complete report of the proceedings had at the sale; request that a time be set for a hearing, and notify the bidders, "in order that each bidder might appear and present his claims to the Court, and the Court might at said hearing decide which bidder should be entitled to purchase the property or the Court might order a new sale or make such other determination as said Court might deem just and proper in the premises."

The notice of sale having provided that ten percent of the purchase price should be paid to the administrator at the time of sale, each bidder, on the suggestion of the administrator, deposited his check for $1280.80, ten percent of the high bid.

Thereafter, the administrator in accordance with his statements made to the bidders, as recited above, filed a written report of the proceedings, and a copy of the lease of May 13, 1941. Later, a hearing attended by the administrator, the bidders above mentioned, and their respective attorneys, was held before the judge. William P. McIntosh filed in court a sworn statement, titled "petition", in which he stated among other things that if his bid of $8 an acre had been raised, he would have made a higher bid; denied that Grieve and James L. McIntosh had an option to buy the lands for the amount of his bid, and asked either that the land be sold to him, as the highest bidder, or that a new sale be ordered.

At the hearing there was testimony tending to show that William P. McIntosh had authorized his wife to

bid as high as $10 an acre for the land subject to the Grieve and McIntosh lease, and that he was still willing to pay that price if necessary.

Nothing was filed, and no testimony introduced on behalf of Grieve and James L. McIntosh, who have taken the position that, as there was no denial of the facts, as reported by the administrator, there was no issue before the court. They seem to contend, also, that the court was considering the question of confirmation of a sale made by the administrator, as regulated by section 88-3228, R. S. 1931. It seems to us that the administrator in this case had not made a sale, but being in doubt in regard to the rights of the bidders, was asking the court for advice and instructions. That it was proper for him to do this has not been denied by any of the parties or the court. See 21 Am. Jur. 492; 33 C. J. S. 1108.

At the conclusion of the hearing the court made an order declaring that Grieve and James L. McIntosh became the purchasers of the lands in the exercise of their "first right and option."

William P. McIntosh has appealed from the order, and hereinafter he will be called the appellant. The interested respondents are Grieve and James L. McIntosh to whom the administrator was ordered to convey the property. Hereinafter they will be called the lessees. The administrator, also named as a respondent, has filed no brief and disclaims interest in the appeal.

At the hearing in the district court, after the appellant on cross-examination had testified that he had seen the lease and knew what was in it, and that he was willing to pay $10 an acre, subject to the "lease and agreement", the cross-examination continued thus:

"Q. You are willing to pay $10.00 and take what was left after Clarence and your brother enjoy all the rights to which they are entitled under their agreement?

"A.   What do you mean by what was left?

"Q.   Whatever there is left after your brother and Clarence enjoy all the rights to which they are legally entitled under this agreement?

"A.   I don't exactly understand the question. I really can't get that question. I don't understand.

"Q.   Mr. McIntosh, the lease provides—the document provides for a lease to Mr. Grieve and your brother for the balance of the five years, which takes it up to 1946, and then an additional five years lease with an option to purchase and the question is, taking that in consideration—the fact you probably wouldn't get possession for several years, and maybe not at all, they might buy it at the end of seven years, would you be willing to pay $10.00 an acre?

"A.   If they bought it, I don't see as there would be anything left for me to buy.

"Q.   Do you mean by that, you would only bid $10.00 an acre if you could have the land, free of the lease?

"A.   I would be willing to give $10.00 an acre and wait for the expiration of the lease.

"Q.   But you wouldn't be willing to pay $10.00 if there was an option to McIntosh and Grieve to buy?

"A.   If there wasn't any land to buy—

"Q.   You wouldn't pay that under those circumstances, would you?

"A.   If the land was there—

"Q.   Won't you just answer. Would you pay $10.00 an acre for this land if you understood there was an option given in this agreement to Clarence Grieve and your brother to buy it?

"A.   If I could get the land.

"Q.   If you knew they had an option to buy, then would you still pay $10.00?

"A.   No, I wouldn't pay $10.00 for nothing."

It is contended that the answers of the witness qualify his assertion that he would have been willing to bid as much as $10 an acre for the land. We do not think so. The questions were based on an assumption (now conceded to be incorrect) that the lessees had an absolute option to re-lease and to purchase the lands.

There was also testimony tending to show that after Mrs. McIntosh had made the bid of $8 an acre, one of the lessees started to bid again, when he was stopped by his co-lessee who stated in effect that further bidding by them (the lessees) was unnecessary. Also, that the administrator then asked Mr. Grieve if he wished to exercise his option, and Mr. Grieve said: "I certainly do."

It is argued on behalf of the lessees that this testimony may have been disbelieved on the ground that there is nothing in the administrator's report to confirm it. The matter is relatively unimportant. It tends only to show how a confusing situation resulted from the effort to exercise the supposed option at the auction sale. Mrs. McIntosh naturally thought there was no reason for her to raise her own bid. The lessees did not bid more, but took the position that the bid established the price for which the administrator should sell to them under their contract with Rigby. The supposed competitive auction sale terminated when it was at least probable that both bidders were willing to give more.

The appellant contends that the so-called option is too indefinite in that it fails to fix a price, citing Fogg v. Price, 145 Mass. 513, 14 N. E. 741, and other similar cases, holding that a covenant in a lease that "if the premises are for sale at any time, the lessee shall have the refusal of them," neither fixes the price nor provides any way in which it can be fixed. The lessees, rely-

ing principally on Hayes v. O'Brien et al., 149 Ill. 403, 37 N. E. 73; 23 L. R. A. 555, and R. F. Robinson Co. v. Drew, 83 N. H. 459, 144 Atl. 67, argue that the contract means that if and when the lessor desires to sell the land he shall offer it to the lessees at the price he is willing to accept from other buyers.

Appellant contends, also, that the lessor's promise in regard to a sale was that at the expiration of the lease, he would offer to sell to the lessees the land he "then owned," and desired to sell. It would probably be difficult to avoid that interpretation of the writing, which expressly reserves to the lessor the right to sell the patented lands subject to the lease, and seems to contemplate that the lessor would, at the termination of the lease, decide what he would do with the land which he had not sold previously.

It is clear, at least, that the provisions of the lease gave the lessees no true "option" as that term is usually understood. Until the lessor decided to sell, the lessees had no power to require him to do so. Decision to sell meant decision on the price to be asked. R. F. Robinson Co. v. Drew, supra; Hayes v. O'Brien, supra.

The conditional or contingent right under this kind of a contract is often distinguished from an "option" by calling it a right of "pre-emption" or of "first refusal". See James on Option Contract, §§ 101, 211, 212; Williston on Contract, § 43, p. 71 of 1st ed., § 44, p. 129 of rev. ed.; Restatement of Property, § 393, comment f, and § 413, comment b. Such provisions are often found in leases. See notes: 117 A. L. R. 1095, 127 A. L. R. 894, 136 A. L. R. 138.

The lessees were to have the right of first refusal "on such terms as first party (Rigby) shall then demand for the purchase price". There could be no offer that would create the right of first refusal until the

price had been fixed in the manner prescribed. Hayes v. O'Brien, supra; Woodruff v. Woodruff, 44 N. J. Eq. 349, 16 Atl. 4, 1 L. R. A. 380. The price was not fixed by Rigby in his lifetime, and at his death he had made no affirmative promise to convey to anyone at any price. His contract, however, as we assume, involved a negative promise not to sell to anyone else without giving the lessees the right of first refusal. We may assume, also, that this negative promise ran with the land and operated as a restraint on alienation of the land in the hands of those who succeeded to the title on the death of the promisor. Those persons are the lessor's heirs, who necessarily are entitled to fix the purchase price when they desire to sell. The heirs have not been determined, but the record tends to show that they are residents of England and that they have not consented to a sale of the land.

The lessees contend (as it seems they must to support the order appealed from) that it was the administrator, rather than the heirs, who had authority to decide to sell; to fix the price, to offer to sell to the lessees at that price, and then, when the offer was accepted, to convey to the lessees. The authorities do not support this contention. See Rockland-Rockport Line Co. v. Leary, 203 N. Y. 469, 97 N. E. 43, L. R. A. 1916 F. 352; Tiffany on Real Property (3d ed.) §§ 133, 310; Tiffany on Landlord and Tenant, §§ 149, 267; 16 Am. Jur. 799, 801; 21 Am. Jur. 884, 887; 32 Am. Jur. 283.

The authority of the probate court to decree specific performance is limited to cases thus defined in the statute: "When a person who is bound by contract in writing to convey any real estate dies before making the conveyance, and in all cases when such decedent, if living, might be compelled to make such conveyance * * *." R. S. 1931, § 88-3301; Poston v. Delfelder, 39 Wyo. 163, 270 P. 1068, and cases cited. See, also, Bewick v. Me-

cham (Calif.) 147 P. (2d) 654, 656, 156 P. (2d) 757, 759-760.

At the instant of Rigby's death the title to his property passed to his heirs. The administrator is vested with no title to the real estate. R. S. 1931, § 88-4001; Cook v. Elmore, 25 Wyo. 393, 403-405, 171 Pac. 261, 264. His possession is for the purposes of administration. His authority to sell is not general, but special and limited, and can be exercised only for the purposes mentioned in the statute. Lamont v. Vinger, 61 Mont. 530, 540-541, 202 Pac. 769, 772; Brenham v. Story, 39 Calif. 179. He is not an agent of the heirs; does not derive his powers from them, and is not subject to their control. O'Connor v. Chiascione, 130 Conn. 304, 33 A. (2d) 336, 148 A. L. R. 169; Restatement of Agency, § 12, comment c, § 14, comment c, § 15, comment e. His possession of their property and sale thereof without their consent is in a sense hostile to their interests. O'Connor v. Chiascione, supra; Lamont v. Vinger, supra.

The proceedings as outlined above contemplated a sale subject to the lease and the conditional option. This meant that the highest bidder would take the land subject to the same embarrassments which it possessed in the hands of the lessor in his lifetime. That was the interest, and perhaps the only interest, the probate court had authority to sell. See Church v. Quiner, 31 Wyo. 222, 229, 224 Pac. 1073, 1075. The deed pursuant to the sale would convey "all right, title, interest and estate of the decedent in the premises at the time of his death", and any other interest acquired "prior to the sale." § 88-3231, R. S. 1931; Demars v. Hickey, 13 Wyo. 371, 381, 80 Pac. 521, 523. Even if the administrator had authority and had undertaken to advertise the land for sale for the purpose of establishing the lessees right of first refusal, we think it would have

been only fair to inform the bidders that the highest bid could not be accepted until it had been submitted to the lessees and they had refused to buy at that price.

As it is clear that the administrator in selling the land for the purposes stated in the order of sale was not acting as the agent or with the consent of Rigby or his heirs, we must hold that the sale was not the voluntary sale at which Rigby intended to give the lessees the right of first refusal. It follows that the lessees had at the sale no preference over other bidders.

Indeed, it now appears probable that no sale will be necessary. When the case was argued in this court, the attorney for the administrator, who is interested only as a fiduciary for creditors and heirs, stated that it then seemed likely that all debts and expenses could be paid from money on hand and to be received as rent. The district court will give that matter consideration in deciding whether the real property shall again be offered for sale.

In view of the misunderstanding as described above, that may have caused a clog in the bidding, we think, in the interest of the heirs, the bid of $8 an acre by appellant should not be accepted.

The order appealed from will be reversed in so far as it directs a sale of the real property, and the case remanded for further proceedings consistent with this opinion.

BLUME, Ch. J., and RINER, J., concur.