396 P.2d 438 (1964)
In the Matter of the ESTATE of Alva POTTER, deceased.
Eugene C. POTTER, Administrator of the Estate of Alva Potter, deceased; Clyde O. Potter, Donald A. Potter, and Eugene C. Potter, sole heirs of Alva Potter, deceased, Appellants,
v.
NORTHERN DEVELOPMENT CO., D.A. Swenson and James D. Swenson, Appellees.
No. 3241
Supreme Court of Wyoming.
November 10, 1964.
*439 W. Hume Everett, Casper, for appellants.
Thomas E. Lubnau, Gillette, for appellees.
Before PARKER, C.J., and HARNSBERGER, GRAY, and McINTYRE, JJ.
Mr. Justice HARNSBERGER delivered the opinion of the court.
After the livestock belonging to this estate had been sold under order of court, and a portion of the proceeds applied to payment of a mortgage-indebtedness, Eugene C. Potter, the administrator of the estate, who was also a son and heir at law of the deceased, petitioned for sale, at not less than its appraised value, of all the estate's real, and the balance of the personal, property. The administrator's petition represented that those properties might depreciate in value unless sold; their sale would be of advantage to the beneficiaries of the estate; there were unpaid mortgage-balances of $48,150 on the ranch real property, and $48,356.96 on the town real property; and an unliquidated claim of the Department of Internal Revenue in the sum of $80,000, as well as the cost and expenses of administration yet to be paid.
The administrator and the other two sons, as sole heirs at law of the deceased, filed their assent to the sale of all or any portion of the real and personal property of the estate which would appear to the administrator as being necessary in the best interest of the estate and the beneficiaries thereof and approved by the court.
Pursuant to this petition and the qualified assent of the sole heirs, the court authorized the administrator to sell all the properties of the estate at either public or private sale.
At a public sale held thereafter, there were bidden upon twelve items of real property prices that were either substantially equal to their appraised values, or were more than their appraised values. The total of the bids upon the twelve items, however, exceeded their combined appraised values by approximately $49,500.
*440 On an item described as an undivided one-half interest in Lots 11 and 12, Block 5, of the First Addition to the Town of Gillette, Wyoming, which was appraised at $15,000, there was bidden $13,700. On another item described as Lots 7, 8, and 9, in Block 2, of the East Side Addition to the Town of Gillette, which was appraised at $25,000, there was bidden only $8,700, by Northern Development Company, and on still another item described as Lot 1, Block 4, in the Original Town of Gillette, Wyoming, appraised at $20,000, there was bidden only $7,300, by D.A. Swenson.
The administrator reported these proceedings to the court, prayed confirmation of sales of the twelve items mentioned above, but asked that the bids and the sales of the undivided one-half interest in Lots 11 and 12, Block 5, of the First Addition to the Town of Gillette, on Lot 1, Block 4, of the Original Town of Gillette, and on Lots 7, 8, and 9, in Block 2, of the East Side Addition to the Town of Gillette, Wyoming, be vacated on the grounds that the high bids on those properties were disproportionate to their values; that bids exceeding ten per cent above the bidden amounts might be obtained; and that the heirs would rather retain the properties than see them sold at a sacrifice.
Clyde O. and Donald A. Potter, the other two sons and heirs at law of deceased, filed objections to the confirmation of the sale of Lot 1, Block 4, of the Original Town of Gillette, and Lots 7, 8, and 9, Block 2, of the East Side Addition to the Town of Gillette.
D.A. Swenson, the high bidder as to Lot 1, Block 4, Original Town of Gillette, objected to the return of sale filed by the administrator.
After a hearing upon the return and account of sale by the administrator and the objections thereto, the court confirmed the sale of all properties offered for sale by the administrator except as to Lot 1, Block 4, of the Original Town of Gillette, but continued the hearing on that item.
By stipulation of the parties and order of the court, the sale of the one-half interest in Lots 11 and 12, Block 5, of the First Addition to the Town of Gillette, was later vacated.
Eugene C. Potter, the administrator of deceased's estate, Clyde O. Potter, Donald A. Potter, and Eugene C. Potter, as sole heirs at law of the deceased, filed their motion for new trial as to the confirmation of sale of Lots 7, 8, and 9, Block 2, East Side Addition to the Town of Gillette.
A supplemental order was then made confirming the sale of Lot 1, Block 4, of the Original Town of Gillette, and an order denying the motions for new trial as to Lots 7, 8, and 9, Block 2, East Side Addition to the Town of Gillette was entered.
Eugene C. Potter, as administrator of the deceased's estate, Clyde O. Potter, Donald A. Potter, and Eugene C. Potter, as sole heirs of the deceased, appealed from the order of confirmation insofar as it affected an undivided one-half interest in Lots 11 and 12, Block 5, First Addition to the Town of Gillette, Wyoming; Lots 7, 8, and 9, Block 2, East Side Addition to the Town of Gillette, Wyoming, and from the court's order denying their motions for new trial as well as from the court's supplemental order confirming the sale of Lot 1, Block 4, of the Original Town of Gillette, Wyoming.
As the record discloses the order confirming the sale of the one-half interest in Lots 11 and 12, Block 5, First Addition to the Town of Gillette was later vacated, no further consideration will be given to that portion of the appeal.
Subsequent to appellants' filing the record on appeal in this court, appellees moved to dismiss, claiming lack of jurisdiction in that the notice of appeal was not filed within time.
The record discloses the following chronology:
June 10, 1963: The administrator filed his return and account of sale of real and personal property;
June 20, 1963: Hearing on the administrator's return of sale was held;
July 2, 1963: An order confirming sale of all properties included in the administrator's *441 return of sale, except as to Lot 1, Block 4, of the Original Town of Gillette, was filed and entered;
July 11, 1963: Appellants filed their motion for new trial as to the sale confirmation of Lots 7, 8, and 9, in Block 2, of the East Side Addition to the Town of Gillette;
August 21, 1963: Appellants filed their amended motion for new trial as to the sale confirmation of Lots 7, 8, and 9, in Block 2, of the East Side Addition to the Town of Gillette;
September 19, 1963: A supplemental order confirming sale of Lot 1, Block 4, of the Original Town of Gillette, was filed and entered in which it was recited that "This matter came on to be heard this 22nd day of August, 1963, having been continued by the Court on its own motion and having further been continued upon the stipulation and request of counsel for the Estate and for the purchasers, D. A Swenson and James D. Swenson * * *."
September 19, 1963: A further order was filed and entered in which it was recited, "This matter having come on for hearing on the 22nd day of August, 1963 upon motions for new trial and amended and supplemental motions for new trial for confirmation of sale of the tracts of land sold by the estate herein and confirmed by an order dated July 1, 1963 [entered July 2, 1963], said tracts of land being described as follows, to-wit:
"A. * * *
"B. Lots 7, 8, and 9, Block 2, Eastside Addition to the Town of Gillette, Wyoming, sold to the Northern Development Co., a Wyoming corporation, for the sum of ($8,700.00) Eight Thousand, Seven Hundred and No/100 Dollars, * * *," and denied the motions for new trial and the amended and supplemental motions for new trial;
October 14, 1963: Appellants filed their notice of appeal to this court.
Under this state of the record, appellees insist that by Rule 59(f) of the Wyoming Rules of Civil Procedure, the appellants' motion for new trial was overruled as of sixty days from July 11, 1963. The date of overruling of the motion for new trial would thus be September 9, 1963, and would make appellants' notice of appeal on the 14th day of October, 1963, some five days late.
Rule 59(f), is as follows:
"Motions for new trial shall be determined within sixty days after the entry of the judgment, and if not so determined shall be deemed denied, unless within such sixty days the determination is continued by order of the court or by stipulation."
Appellees, in their motion to dismiss, acknowledge that at the hearing on August 22, 1963, the court orally denied the motion for new trial. The delay of 28 days between the court's announcement of its decision and the entry of its order was not due to fault on the part of the appellants. Unless otherwise expressly directed by the court, the preparation and presentation for the judge's signature of formal orders and judgments are usually and almost without exception left to the successful party. Certainly there is no duty on the part of the unsuccessful party, in this instance the appellants, to prepare them unless so ordered or directed by the court. As appears by appellants' resistance to the dismissal here sought and by the representations therein made, which have not been challenged by appellees, the attorney for appellees did prepare the order denying appellants' motions for new trial, and appellants approved and returned it to appellees' counsel.
From the facts mentioned and the recitals made in the court's orders of September 19, 1963, it must be concluded that the court intended to continue the matter until the filing and entry of its formal order denying the motions and also, in effect, that counsel for both parties had so agreed and stipulated.
*442 We dealt with a similar situation in Brasel and Sims Construction Co. v. Neuman Transit Co., Inc., Wyo., 378 P.2d 501, 503, and overruled a motion to dismiss because it appeared both court and counsel had proceeded as if a continuance was to be effective until the matter was resolved by the court. Here the implied continuance was until an order was prepared, approved as to form by counsel, and then entered.
For the reasons stated, appellees' motion to dismiss the appeal is denied.
Coming to the merits of the appeal, the appellants attack the court's confirmation of the sales to Northern Development Company and D.A. Swenson as being an arbitrary abuse of its discretion because the order of confirmation deprived appellants of their property, (1) without just compensation; (2) contrary to the best interests of the heirs and of the estate; (3) without hearing or considering argument or citation of authorities; (4) for an inadequate price and less than their appraised values; and (5) because the rule governing private sales, i.e., for not less than the properties' appraised values, should have been followed.
Both by brief and argument appellants have also contended the court exceeded its jurisdiction and abused its discretion by confirming these sales contrary to the interest and against the express wishes of the administrator and the heirs and in derogation of the right of the heirs to take these properties in kind, when there was available from sales of other properties, at or above their appraised value, considerably more money than was necessary to discharge all obligations of the estate.
On the other hand appellees maintain that confirmation of the sale of real property can only be denied when two of three elements set forth in § 2-276, W.S. 1957, occur, and insist that in this case there must not only be a showing that the sum bid was disproportionate to the value of the property, but that a sum exceeding the bid by at least ten per cent, exclusive of the expense of resale, must also have been obtained in order to authorize the court to vacate the bids or sales of the properties which are the subject of this appeal.
The pertinent portion of § 2-276, is as follows:
"* * * if the proceedings were unfair, or the sum bid or received disproportionate to the value, and if it appears that a sum exceeding such bid at least ten per cent., exclusive of the expenses of a new sale, may be obtained, the court may vacate the sale * * *."
This statute may need legislative clarification because of its wording, but in view of other holdings we here make, it is not necessary that we now give it judicial interpretation.
The first question to be decided is whether the order of sale finally and irrevocably decreed the sale of all property of the estate. In considering this phase of the matter, it must be kept in mind that the order of sale recited that the verified petition of the administrator had prayed only for an order to sell some of the real and personal property of the estate and that the assent given by the heirs was only to the sale of all or any portion of the real and personal property of the estate that in the judgment of the administrator appeared necessary in the best interests of the estate and the beneficiaries thereof. The administrator having asked to sell only some of the properties, and the heirs having consented to the sale of only such properties as the administrator deemed necessary in the best interest of the estate and its beneficiaries, both the administrator and the heirs were entitled to believe and to assume that the court's order of sale was made in conformity with the administrator's petition and with the heirs' qualified assent. In consequence, the heirs and the administrator had no reason to and did not object to or appeal from the order of sale. Under these circumstances, to now hold the heirs are not entitled to a modification of the order, when the sale held was no longer necessary, was contrary to the best interests of the estate and its beneficiaries, was contrary to the *443 judgment of the administrator, and was for less than and disproportionate to the appraised values of those properties, would be a gross miscarriage of justice. The statutory authority to sell estate properties is nothing more than an expedient to enable courts to obtain the monies necessary to discharge an estate's obligations or to make more practicable the proper division and distribution of the estate's assets, when necessary or when desired by the entitled beneficiaries. If the authority is to be extended beyond those needs and, at all events, to require a sale to be made in every case merely because an order to sell has been made, even when a change in the condition of the estate makes such a sale unnecessary and contrary to the interests of the beneficiaries, such a holding could approach absurdity. For instance, if, after an order of sale was made and after bids or offers were received for properties, but before confirmation, newly discovered cash assets were found, in amounts far in excess of the entire obligations of the estate, it would seem strange law to say that the vested title of heirs to real estate must be defeased against their wishes.
In re Guardianship of Hilton's Estate, 72 Wyo. 389, 265 P.2d 747, 43 A.L.R.2d 1429, does not help the appellees. This was a guardianship matter in which, on the petition of the guardian, an order to sell the ward's property was made for the purpose of providing monies necessary for the ward's care, comfort and maintenance. A public sale was held at which the guardian accepted bids which were in excess of the property's appraised value. The guardian then made a report and return of sale, relating that the bid and offer in connection with the real estate put up for sale seemed desirable and "should be approved and the sale confirmed," and prayed that the court make such order as may be required respecting confirmation of the sale of the real estate. The only objection made at the hearing for confirmation was that the daughters of the ward desired personally to reside at the disputed property and wanted not to sell the property. The court, however, by its order, confirmed the real estate sale, noting that the guardian had excepted thereto. Both the guardian and the guardian ad litem then moved for reconsideration of the guardian's report and return of sale, and the court overruled the same. The guardian then moved to set aside the order of confirmation, but, without waiting for a ruling on that motion, the guardian filed her notice of appeal from the order of confirmation and the court then overruled that motion.
From this recount respecting the Hilton case, it should be clear that it presented materially different facts from those now before us. Hilton was a guardianship proceeding where the necessity to sell arose from the continuing need to provide for the comfort, care and maintenance, for an unascertainable period, of a living person. Here, in administering and settling the estate of a deceased person, there was need only to pay the obligations of the estate. In the Hilton case, the amounts necessary for the ward's needs were unascertainable and unliquidated. Here the amounts needed were either fixed or could be reasonably approximated. In Hilton, the guardian accepted the bid offered for the property and recommended that the sale be approved. Here the administrator did not accept the bids offered and recommended that those bids and the sales not be approved. In Hilton, the guardian ad litem did not appear, and the guardian and the daughters of the ward stood silently by and no one made objection to the confirmation until after the court had announced its decision confirming the sale. Here the administrator and the heirs objected and protested the confirmation of the sales. In Hilton there was no issue as to the bid price being disproportionate to the property's value, because the bid price was above its appraised value. Here the question of disproportion was insisted upon by the administrator and the heirs, and, despite the court's finding that the bid was not disproportionate to the value of the properties, the great disparity between the appraised values and the bidden prices is not merely apparent, but, upon the *444 whole record, leaves considerable doubt but that the court's decision was against the weight of the evidence. This conclusion is justified because the conservative reliability of the appraisers' judgment was convincingly demonstrated when the other properties of the estate, both real and personal, for the most part, brought more than the amounts for which they were appraised, and, in the few cases where a less price was bidden, that price was substantially the same or only slightly less than the amounts for which they were appraised.
In Hilton, it was the ward's title to property that was sold for the ward's own benefit. Here it is the heirs' title to property that is attempted to be divested for the sole benefit of the bidders.
We are mindful that in Hilton it was said there was no issue before the court at the hearing on the return of sale as to whether the sale was in the best interest of the ward and that the best interest of the ward had been finally adjudicated when the time for taking appeal from the order of sale expired. The finality of that adjudication was predicated upon facts and conditions existing at the time the order was made and which remained unchanged when the hearing for confirmation in Hilton was held. Here the findings made when the order of sale was entered just as finally adjudicated the need to sell under the facts and conditions existing at the time the order to sell was made. But those findings in the order of sale became res judicata only as to the facts and conditions existing at the time the order was made. They do not adjudicate what the necessities may be in the future and under changed conditions which might then make such sales unappropriate, unnecessary, unjust, and in derogation of the titles of those who have already succeeded to the title to the properties.
In Hilton a principal issue was whether final decision regarding confirmation rested with the guardian or with the court. Here the main issue is whether there should be denial of confirmation where the conditions which moved the court to authorize sale of estate properties had changed so that the sale was unnecessary, not for the benefit of the estate, and against the best interest of the title holders of the property.
In Hilton, it was pointed out that appellant had failed to produce any authority for holding that confirmation of sales of real estate may be refused for reasons other than those set forth in what is now § 2-276, W.S. 1957.
The references made in Hilton to In re Leonis' Estate, 138 Cal. 194, 71 P. 171, and In re Spriggs' Estate, 20 Cal. 121, may have caused appellees to assume the door was being closed to the court's refusing confirmation on the ground of a change in circumstances. But that is not so. Where the interest or need of the estate would no longer be served under changed circumstances, and where the express desire and interest of the title holders of the real estate would be adversely affected, denial of confirmation is not only proper but is simple justice.
Other pronouncements in the Hilton case, at 265 P.2d 758 and 759, more nearly indicate the true purport of that decision. In pointing out that it was the court and not the guardian that had superior authority, the decision said the court had statutory power "to give or withhold approval and confirmation within the limit of the discretion specified by statutes," and "it is within the sound discretion of the court whether or not to confirm such sale * * *. It should be understood without saying, that in the exercise of this discretion the court must not be arbitrary or capricious, but should be guided solely by considerations of the ward's best interest." In Hilton the court was concerned with making provision for the indeterminate future care, comfort and need of a living person. Under those circumstances, it was well within the discretionary province of the court to make liquid the entire assets of the ward. It was for that reason that the court's confirmation of sale was upheld. Here, the material facts bearing upon the best interest of the parties, which were the creditors, the estate, *445 and the heirs of the deceased, are vitally different. More than enough money was available to pay not only the known debts of the estate and the costs and expenses of administration, but also there was more than enough money to satisfy a possible but unliquidated claim of the United States Revenue Department estimated at $80,000.
In these changed circumstances, it was improper to confirm the sale of these two properties for less than their appraised value and contrary to the desires of the owners of their title, who had limited their assent to sell for not less than the properties' appraised values. While the discretion lodged in the court is broad in the matter of confirmation of sales, it does not extend to divesting heirs of the title to property which they have received by inheritance from a deceased, against the wishes of those heirs, unless that is necessary to pay the claims of creditors and the costs of administration. The purpose of the sale, which was to obtain necessary funds, had already been accomplished without selling these two properties, and, confirmation should, therefore, have been denied. See In re Billy, 34 Okl. 120, 124 P. 608, 611.
In State ex rel. Craft v. Williams, 131 Ala. 56, 30 So. 782, 784, the court well states the rule which must be here applied. It is as follows:
"* * * So, then, as against the heir or his successor in interest, the land cannot be sold by an administrator to pay debts, unless there exists at the time of the sale valid, legal, subsisting demands against the intestate and an insufficiency of personal property to satisfy those demands. Steele v. Steele, 64 Ala. 438, 38 Am.Rep. 15; Scott v. Ware, Id. 174. This must be the status or condition of the estate at the time the decree of sale is rendered, and this status must continue until the title of the heir is devested [sic] by the proper execution of the decree. * * *" (Emphasis supplied.)
Of course, the whole of what the Alabama court said as above quoted is inapplicable in Wyoming because by § 2-248, W.S. 1957, priorities between real and personal property are discarded. But when the authority to sell stems from the need for funds to pay estate obligations, that status must continue until the title of the heirs is finally divested by confirmation of sale and execution and delivery of the proper administrator's deed.
Further along in the same decision, the Alabama court also said, 30 So. at 784:
"* * * If the judgment or decree is that the order of sale be granted, it is conclusive that, at the time of its rendition, the personal property of the estate is insufficient for the payment of debts. Or, if the judgment or decree is that the application be not granted, it is conclusive that the personal assets are then sufficient for the payment of debts. The judgment or decree has relation solely to the status of the estate in this respect, at the time of its rendition, and not to its status at some subsequent time, when new facts may have occurred changing it. * * *"
The same effect of changed circumstances was early recognized in Illinois in Bozza v. Rowe, 30 Ill. 198, 83 Am.Dec. 184; 21 Am. Jur., Executors and Administrators, § 567, p. 699; and in a guardianship matter in Harkrader v. Bonham, 88 Va. 247, 16 S.E. 159, 160, a sale by the guardian, authorized by the court when the ward's interest indicated the need, was refused confirmation when it appeared the condition of the ward's needs had been altered.
In In re Rigby's Estate, 62 Wyo. 401, 167 P.2d 964, 965, the lands of decedent at the date of his death were under lease providing a conditional right of renewal and, "the right and option to purchase all of said above described lands of which first party [lessor] is then the owner, on such terms as first party shall then demand for purchase price of said lands, it being understood second parties [lessees] are to have the first right, option and privilege of purchasing said lands from said first party." The administrator, having procured an order to sell this real property at either public or private *446 sale to pay debts and expenses of administration, offered the same at public auction at which the lessees claimed that by virtue of their lease they were entitled to purchase the lands for the sum offered by the high bidder. At the conclusion of the hearing upon the administrator's report of the sale proceedings, the court made an order declaring the lessees became the purchasers of the lands in the exercise of their "`first right and option.'" The high bidders at the sale appealed.
This court, reversing, made several cogent pronouncements which assist in deciding the instant case. The first bears upon whether any sale was made by the administrator. In the Rigby case it was said, 167 P.2d at 966, "It seems to us that the administrator in this case had not made a sale, but being in doubt in regard to the rights of the bidders, was asking the court for advice and instructions." The force of this statement in its application here is that while in Rigby the administrator only sought advice and instruction, here the administrator merely reported the bidden offers and actively sought refusal of confirmation. Another important observation in connection with the position of the heirs with respect to the decedent's real property, the court, in Rigby, speaking in connection with the restrictions there present, said, at 167 P.2d 968:
"* * * We may assume, also, that this negative promise [of first refusal] ran with the land and operated as a restraint on alienation of the land in the hands of those who succeeded to the title on the death of the promisor. Those persons are the lessor's heirs, who necessarily are entitled to fix the purchase price when they desire to sell. The heirs * * * have not consented to a sale of the land." (Emphasis supplied.)
This points up the need for consent from the heirs which in the case to be decided here was only a qualified consent. In re Rigby's Estate also explains the importance of the heirs' consent thus, 167 P.2d at 968:
"At the instant of Rigby's death the title to his property passed to his heirs. The administrator is vested with no title to the real estate. * * * His authority to sell is not general, but special and limited, and can be exercised only for the purposes mentioned in the statute. * * * His possession of their property and sale thereof without their consent is in a sense hostile to their interests. * * *" (Emphasis supplied.)
This stresses the significance of the consent of heirs, although, under certain circumstances, consent may not be required.
It should be remembered the administrator petitioned for sale of the estate's properties at private or public sale at not less than their appraised values on the grounds the properties might depreciate in value unless sold; that their sale would be of advantage to the beneficiaries of the estate; and because there were unpaid debts and expenses to be satisfied and paid. The heirs only gave their assent to a sale at not less than the properties' appraised values, and only insofar as it might appear to the administrator as being necessary in the interest of the estate and the beneficiaries thereof. It seems clear that the values which were thought might depreciate unless the properties were sold were the values placed upon those properties by the appraisement. When the court ordered the sale upon the representations made by the administrator and this qualified assent of the heirs, both the administrator and those heirs had a right to assume that, in making the order of sale, the court was responding to the administrator's request to sell for not less than the appraised value of the properties and for the best interest of the beneficiaries, as well as to provide the money necessary to satisfy the obligations of the estate.
Finally, in Rigby, the court said, 167 P.2d at 969:
"Indeed, it now appears probable that no sale will be necessary. When the case was argued in this court, the attorney *447 for the administrator, who is interested only as a fiduciary for creditors and heirs, stated that it then seemed likely that all debts and expenses could be paid from money on hand and to be received as rent. The district court will give that matter consideration in deciding whether the real property shall again be offered for sale."
This expression of the court should not be disregarded. The only legal justification for defeasance of the title of heirs, which vested in them immediately upon the death of their father, is limited to express provisions of our law. These include divestiture by the testator's will or by judicial sale held pursuant to statutory authority. The substance of that authority is found in § 2-261, W.S. 1957, and certain sections following. Section 2-261 empowers the court, by order, to authorize the executor or administrator to sell any real, as well as personal, property of the estate when such sale is necessary to pay family allowances, outstanding debts of decedent, debts, expenses or charges of administration, or legacies, or when it appears to the court or judge that it is for the best interest of all "parties interested in the said estate." The "parties interested in the said estate" does not include prospective bidders or purchasers. Only the executor, administrator, spouse, next of kin, heirs, legatees, devisees, and creditors of the deceased or of the administration are parties interested in the estate.
To obtain on order of sale, it is provided in § 2-262, W.S. 1957, that "he," obviously referring to an executor or administrator, must present a verified petition to the court showing the amount of personal estate that has come into his hands; how much remains undisposed of; the debts outstanding against the decedent; the amount of family allowance due after it has been in force six months; debts, expenses, and charges of administration accrued, with estimate of further accruals; general description of all real property of which decedent died seized or in which he had any interest, or in which the estate has acquired any interest, and the condition and value thereof, and whether joint or separate property; and the names of legatees, devisees, and heirs of the deceased. Section 2-263, W.S. 1957, following, then provides:
"If it appears to the court or judge from such petition, that it is necessary to sell the whole or some portion of the real estate for the purposes and reasons mentioned in the preceding section [§ 2-262], or any of them, such petition must be filed and an order thereupon made, directing all persons interested in the estate to appear before the court or judge thereof, at a time and place specified, * * * to show cause why an order should not be granted to the executor or administrator to sell so much of the real estate of the decedent as is necessary." (Emphasis supplied.)
Section 2-266, W.S. 1957, says that at the time and place of the hearing, if the consent in writing to such sale of all parties interested is not filed, the court or judge must proceed to hear the petition and hear and examine the allegations and proofs of the petitioners, and of all persons interested in the estate who may oppose the application. After such a hearing, § 2-268, W.S. 1957, provides:
"If it appears necessary to sell a part of the real estate, and that by a sale thereof the residue of the estate, real or personal, or some specific part thereof, would be greatly injured or diminished in value, or subjected to expense, or rendered unprofitable, or that after such sale the residue would be so small in quantity or value, or would be of such a character with reference to its future disposition among the heirs or devisees, as clearly to render it for the best interests of all concerned that the same should be sold, the court or judge may authorize the sale of the whole estate, or any part thereof, necessary and for the best interest of all concerned." (Emphasis supplied.)
*448 When the foregoing requirements have been complied with, § 2-269, W.S. 1957, provides:
"If the court or judge is satisfied, after a full hearing upon the petition and an examination of the proofs and allegations of the parties interested, that a sale of the whole or some portion of the real estate is necessary, for any of the causes mentioned in this chapter, or if such sale be assented to by all the parties interested, an order must be made to sell the whole or so much and such parts of the real estate described in the petition, as the court or judge shall deem necessary or beneficial."
It thus seems clear that the only right the court had to sell the two properties here in question must be found within the purview of the above-mentioned statutes.
While for the most part the administrator's petition for sale substantially fulfilled the requirements of § 2-262, only the total estimated value of the entire properties of the estate, both real and personal, is set forth, although there is appended to the petition an itemization of the personal properties with their separate appraised values. Nowhere in the petition, however, is the appraised value of the real estate, either in total or in parcels, set forth, although each parcel of land is described in separate detail. But the petition asked only for permission to sell, "at private or public sale for not less than the appraised value." (Emphasis supplied.)
While the order of sale must be held sufficient to authorize sale of the estate's properties, it falls short of conforming to the best practice because it leaves uncertainty as to just what was intended. Had the order specified the sum which the court considered necessary to be raised, or directed that the sales cease when enough money was obtained to accomplish the intended purposes, the difficulties now present would have been obviated. See 34 C.J.S. Executors and Administrators § 575, pp. 534, 535, nn. 12-15, 17, with citations thereunder. In the absence of such specifications we must look to the administrator's petition for sale and the assent of the heirs thereto in order to understand and give proper interpretation to the order. See 34 C.J.S. Executors and Administrators § 578, p. 540, nn. 75, 76, with citations thereunder. Doing this, it becomes clear that the only sound reason for ordering the sale was the need to provide money to pay both the known and the possible but unliquidated debts and obligations of the estate as they were exhibited by the petition and noted in the heirs' assent and to protect the values represented by the estate's assets. The order makes no reference to these debts or obligations, their amounts, or the need to provide funds to discharge the same. The order merely states, "It appearing to the satisfaction [sic] of the Court from the evidence introduced and from a full examination of the facts, that it is necessary and for the best interest of the estate and the beneficiaries thereof." Just what those debts or obligations were which made a sale necessary, and the amount of money needed to satisfy them, can only be ascertained from the administrator's petition. Looking at that petition, it appears the administrator represented, "that it would be for the best interest of the estate, and the beneficiaries thereof, that he sell the following described real and personal property at private or public sale for not less than the appraised value" (emphasis supplied) thereafter listing and describing all properties of the estate. After the description of properties, the administrator also said, "it is necessary to sell said real and personal property in order to protect the value represented by these assets, and to take care of the indebtedness of said estate as hereinbefore mentioned." (Emphasis supplied.) In the absence of more explicit and definitive expression, it must be concluded that the values to be protected were the values placed upon the properties by their appraisal, they then being the only values ascertained.
Somewhat similarly the assent of the heirs stated it appears necessary and for the best interest of the estate that said real and *449 personal property of said estate should be sold and liquidated "as prayed for by the said Administrator" (emphasis supplied) and the consent given was limited to "the sale of all or any portion of the real and personal property of said estate, that in the judgment of the Administrator and as approved by Order of the Court shall appear necessary in the best interests of the estate and the beneficiaries thereof." (Emphasis supplied.)
Actually, the captioned order of sale did not, in fact, either order or direct the administrator to sell anything. It merely authorized the administrator to sell the indicated properties. Whether the language used in the order conferred upon the administrator a discretion as to whether or not to sell all or any part of the properties of the estate which the administrator deemed necessary to accomplish the purpose for which the order of sale was sought, is therefore a matter for interpretation and understanding of the purport of that order. It may, therefore, be legitimately concluded that the authority granted by the order was restricted to sell only in compliance with the terms set forth in the petition and only to sell so much of the property as was needed for the purpose of paying the debts and obligations of the estate and at the appraised values of the properties.
The estate's properties were appraised at $344,005.95, with mortgage liabilities of $122,186.79. There was also a disputed claim of the internal revenue service of $80,000. The record, however, shows a claim by the revenue service of only $53.63, plus an unliquidated sum, as well as approximately $2,200 in other creditors' claims. Thus, the outside total of the estate's debts were something less than $205,000, plus the costs of administration.
There was realized from the sale of certain personal properties the sum of $57,617.31, and from the sale of real properties, other than the two parcels in dispute here, the sum of $289,069.49, which totalled $346,686.80, considerably more than was necessary to pay every conceivable charge against the estate. There was, in consequence, no necessity to sell the two parcels here litigated. Furthermore, the sales of both the personal properties and the several parcels of real estate, both ranch lands and town properties, with the exception of these two properties, not only brought substantially the amount of their appraised values but, in practically every instance, considerably more than their appraisal. It would be more than strange if the judgment of the appraisers, which in practically all cases was modestly low, should now be taken to have been almost treble the amount which was found by the court to be not disproportionate to their true value.
While the conclusions here reached render it unnecessary to base our decision upon the impropriety of the court's requirement to furnish to each of the purchasers an abstract showing good and merchantable title in the estate, with the right to sell and convey the same, it must be noted, because all that is authorized to be conveyed by such sales under the provisions of § 2-279, W.S. 1957, is all the right, title, interest, and estate of the deceased in the premises at the time of his death, except that if prior to the sale, by operation of law or otherwise, the estate has acquired any right, title, or interest in the premises, other than or in addition to that of the decedent at the time of his death, such right, title, or interest will also pass by such conveyance.
In conclusion and in line with what has been said, we must hold that because in this case the order of sale must be interpreted in the light of the administrator's petition for sale, and the qualified assent thereto by the sole heirs and title-owners of the disputed properties, the order of sale authorized the sale of only so much of the estate's properties as might be necessary to provide enough funds to pay and discharge all obligations and charges against the estate, bring substantially their appraised values, and be in the interests of the estate and the beneficiaries thereof; that without selling Lots 7, 8, and 9, in Block 2, of the East Side Addition to the Town of the City of *450 Gillette, Wyoming, and Lot 1, Block 4 of the Original Town of the City of Gillette, Wyoming, there were properly sold other estate properties which gave the estate considerably more money than was necessary to satisfy all debts of the estate and to pay all costs of administration; that the confirmation of the sale of those two properties for the sums less than their appraised values was unnecessary, not in the best interests of the estate, and improper because such sales would be for sums much less than their appraised values and grossly disproportionate to the values upon which the assent of the heirs was predicated and contrary to the order of sales as here construed; and that the order of confirmation requiring an abstract showing good and marketable title in the estate with the right to sell and convey the same was improper.
The confirmation of sale of the subject properties is therefore reversed, and the district court is directed to vacate the order entered July 2, 1963, confirming sale of real and personal property insofar as it confirmed the sale to Northern Development Company, a Wyoming corporation, of the real estate described as Lots 7, 8 and 9, in Block 2, of the East Side Addition to the Town of the City of Gillette, Wyoming, for the sum of $8,700, and to vacate the supplemental order entered September 19, 1963, wherein the sale of Lot 1, Block 4, of the Original Town of the City of Gillette, Wyoming, for the sum of $7,300 was confirmed, and the district court is further directed to enter its order denying and refusing confirmation of those sales.
Reversed with directions.