**HORSE CREEK ROYALTY CORP., a Wyoming corporation, and George Cale, Guardian of the Estate of James Cale, an incompetent, Appellants (Plaintiffs below),**

v.

**SOUTHLAND ROYALTY COMPANY, a Delaware corporation, et al., Appellees (Defendants below).**

**No. 3936.**

Supreme Court of Wyoming.

Oct. 5, 1971.

Rehearing Denied Nov. 8, 1971.

John Burk, Casper, for appellants.

Morris R. Massey, of Brown, Drew, Apostolos, Barton & Massey, Casper, William D. Redle, of Redle Yonkee & Arney, Henry A. Burgess, of Burgess, Kennedy & Davis, Sheridan, for appellees.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Mr. Justice PARKER delivered the opinion of the court.

The parties agree that this appeal from a summary judgment turns on legal principles and that no issue of material fact was raised below. W. S. Cale in 1925 received a homestead patent for Sec. 19, T. 54 N., R. 72 W., Campbell County, Wyoming, with mineral rights in the south half of the section (except coal in portion thereof). A few months later he and his wife, Emma, executed a warranty deed for Section 19 to his wife, Emma, who retained the property until her death in 1942, although she on two occasions leased the south half of the section for oil and gas.

Mrs. Cale left a will which stated inter alia, "The mineral rights which I have in Section 19, Township 54 North, Range 72 West shall be divided equally between by children, Lola B. Haveron, George Cale, Frank Cale and James Cale." She made no specific disposition of the surface rights to Section 19, but provided that all other property, real and personal, possessed by her should be divided between Lola B. Haveron, George Cale, and Frank Cale. Letters testamentary were issued to James M. Cale. The petition for the probate of the will recited that deceased owned the oil rights to the south half of Section 19 and that petitioner was unable to allege the value of the oil rights as the same were unknown for the reason that the property had not been developed for oil, but that it

had been previously leased for oil purposes and was thought by deceased to possibly contain oil and for that reason mention thereof was made in her last will and testament.[1] Thereafter, no mention of oil or gas rights was made in the probate proceedings. The estate inventory and appraisement merely listed and valued the section without reference to mineral interests. In the process of the probate the executor petitioned the court for the sale of Section 19, alleging that there were certain debts, that it was for the best interest of the estate, and that he had a prospective buyer. Order to Show Cause was published four times, the record disclosing no personal service of the notice having been made on any person. The court authorized the private sale of Section 19 by the executor and his deliverance to the purchaser upon payment of an executor's deed in the manner and form as provided by law;[2] and later confirmed the sale of the real property for $2,560.00, authorizing delivery to the purchaser, Twiford Land and Livestock Company, of a good and sufficient deed to Section 19. The executor's deed conveyed to the company "all of the right, title, and interest of said deceased at the time of his [sic] death and all of the right, title and interest of the Estate of said deceased" to Section 19 together with all improvements thereon and with all appurtenances thereunto appertaining or belonging.[3]

In 1968 drilling rigs were set up on the south half of Section 19 by parties authorized by defendants, whereupon plaintiffs [4] unsuccessfully brought an eject-ment suit in federal court. Later they failed in an attempt to reopen the estate, and then brought the present suit to quiet title. The trial court after review of the probate file and abstracts of title covering the real property interests, which were before the court, and hearing of arguments from the parties, both of whom had sought summary judgment, held for the defendants, and this appeal has resulted.

Plaintiffs urge error, arguing that full legal title to the mineral rights vested in the named Cale devisees upon the death of Emma Cale and that the probate record showed no order or document divesting these devisees but in fact disclosed the sale of the mineral estate could not have been authorized. Alternatively plaintiffs contend that the probate court lacked jurisdiction to make any sale of the real property and that the sale was a nullity and void. They also maintain that no statutes of limitation apply in the controversy.

Conversely defendants rely upon the title which their predecessors in interest received by the executor's deed, asserting that under § 2–248, W.S. 1957, all property of deceased was chargeable with the debts and might be sold; all proceedings in the probate court were regular; the description of the property was sufficient to include the mineral estate; the statutes of limitation, §§ 2–293, W.S. 1957, and 1–13, W.S. 1957, have run; and the title to mineral rights in the south half of Section 19 is good in them.

■ Addressing ourselves to plaintiffs' discussion of § 88–3201, R.S. 1931 (identical to § 2–248 [5]), and its impact, we can accept

---

1. The Section 19 ranch property was valued by the executor at $1,000.00, which amount was also later placed upon that property by the appraisers.

2. Section 88–3231, R.S.1931 (now § 2–279, W.S.1957), stated in part, "Conveyances so made convey all the right, title, interest and estate of the decedent, in the premises, at the time of his death."

3. Over the years Twiford and its successors in interest granted oil, gas and mineral leases to various companies for portions of the south half of Section 19.

4. According to plaintiffs the Horse Creek Royalty Company is owned by the heirs of Lola B. Haveron, George Cale, and Frank Cale. Their complaint alleged mineral royalty deeds having been executed in 1969 in that company's favor by George Cale, Lola B. Haveron, and Clara M. Cale, surviving sole heir of Frank Cale.

5. "§ 2–248 * * * All the property of the decedent shall be chargeable with the payment of the debts of the deceased, the expenses of administration, and the allowance of the family, except as otherwise

their quotation from 5A Thompson, Real Property, § 2610 (1957) to the effect that the liability of devised property to sale for debts of deceased and expenses of administration is in essence a lien on the land. We can likewise agree with plaintiffs that just as any other lien it must be foreclosed by statutory procedures to divest the devisees of any title, and we find nothing unusual in this court's holding [6] that its authority does not extend in the confirmation of sales to divesting heirs of title in property which they have received by inheritance from deceased unless necessary to pay claims of creditors and costs of administration. However, none of the contentions so made by plaintiffs come to grips with the basic question before us, i. e., whether or not under the probate proceedings the property in question was validly sold for the payment of the deceased's debts.

One of the basic principles on which defendants rely, citing 38 Am.Jur.2d Gas and Oil § 14, is the general rule that a grantor's legal interest in the oil and gas is accessory to his legal interest in the land so as to pass by a grant of the land unless he expresses an intention to retain that interest. While this is conceded by the plaintiffs as well as the fact that a majority of mineral estates are created by reservations from deeds, they discuss at some length both reservations and exceptions, emphasizing that an essential element of a reservation is that it must be in favor of the grantor. We think such distinctions are here unimportant. In discussing a matter somewhat similar, the California court in Blankenship v. Whaley, 124 Cal. 300, 57 P. 79, 81, said the administratrix could not by any reservation or exception in her deed, whether made in pursuance of a court order or not, grant a new right or interest in the land conveyed but if at the time of the deed there was any such existing right it was perfectly proper for the administratrix under the court's order to have noted such rights and to have excepted them from the conveyance of the interest of the decedent. In the present case where the petition alleged the necessity of the sale of all of Section 19 for the payment of the debts of the deceased and the conveyance did not indicate a transfer of the surface rights *only*, we see no reason why the general rule as to the passing of mineral rights with the grant of the land should not be applied.

■ Importance is also attached to the statute, § 88–3237, R.S. 1931 (now § 2–297, W.S. 1957), which provided that specific devises were exempt from liability for debts and expenses of administration if it appeared to the court necessary to carry into the effect the intention of the testator and there was other sufficient estate. It is argued that this meant the residuary surface estate would have had to be consumed by the estate's indebtedness before the specific devise was even exposed to liability, it being also asserted that the record shows there to have been other sufficient property. While such a contention might properly have been made at the time of the probate proceedings and objection then registered so that the court might have investigated the bases for any such complaint, the present argument overlooks that where a sale is authorized all antecedent steps are presumed to have been duly and properly taken. Lethbridge v. Lauder, 13 Wyo. 9, 76 P. 682, 685; 31 Am.Jur.2d Executors and Administrators § 415; 34 C.J.S. Executors and Administrators § 578.

■ Perhaps some specific mention should be made of plaintiffs' statement that "The Order to Show Cause which was published did not describe any property, although required to by § 88–908 R.S. 1931

---

provided by law. And the said property, personal and real, may be sold as the court or judge may direct, in the manner prescribed in this chapter. There shall be no priority as between personal and real property for the above purposes."

6. In re Potter's Estate, Wyo., 396 P.2d 438, 445.

(presently § 2–265, W.S. 1957)." This statement is unsupported by authority and flies in the face of In re Roach's Estate, 139 Cal. 17, 72 P. 393, 395, concerning an identical statute, where it was held that the section did not require a description of the property and that aside from that fact the court could "see no necessity for * * * [the order to show cause to contain] a description which is given in the petition, and fully apprises all interested parties at that stage of the proceedings of the land proposed to be sold."

The claim of the probate court's lacking jurisdiction to make any sale and that the result was a denial of due process is serious enough to require examination. This attack seems to be predicated upon the assumption that § 88–3217, R.S. 1931 (now § 2–264, W.S. 1957), required personal service on the heirs and that § 88–3218, R.S. 1931 (now § 2–266, W.S. 1957), contemplated that an actual hearing be held. Although extensive argument is presented that the statute should be interpreted according to plaintiffs' views, such arguments are without persuasive force and no precedent is furnished as substantiation. We find the statutes to be clear and to require no extended analysis or interpretation as to their meaning. Section 88–3217 provided as contended that the order to show cause must be personally served on all persons interested in the estate if they were residents of the county at last ten days before the time appointed for hearing the petition or published four successive weeks in such newspaper in the county as the court directed. That the requirement is in the alternative is beyond question, which circumstance would seem to nullify the argument that personal service was essential. Adverting to §. 88–3218 (now § 2–266), emphasis is placed upon the fact that the court "must proceed to hear the petition." As previously indicated in discussion of another aspect of the case, it must be presumed that the court in this instance *did* hear the petition. Accordingly, we find no merit in the claim as to the lack of the probate court's jurisdiction or in any resulting charge that there was denial of due process.

While defendants discuss at some length statutes of limitation and principles relating to estoppel, no consideration of such defenses is required since the record discloses no relief which could have been properly granted by the trial court to plaintiffs.

Affirmed.

GRAY, J., dissenting.